No. 79,419

STATE OF KANSAS, *Appellant,* v. STEVEN ALLEN KRAUSHAAR, *Appellee.*

(957 P.2d 1106)

Opinion filed April 17, 1998.

Kyle G. Smith, assistant attorney general, argued the cause, and *Carla J. Stovall,* attorney general, was with him on the brief for appellant.

*Steven L. Opat,* of Harper, Hornbaker, Altenhofen & Opat, Chtd., of Junction City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant was charged with two counts of making a false writing under K.S.A. 21-3711. A district magistrate judge found the evidence submitted at preliminary examination to be

sufficient to establish the crimes charged under K.S.A. 21-3711. The defendant filed a motion to dismiss based upon a failure by the State to produce evidence showing intent to induce official action. See K.S.A. 22-3208. The district judge granted the motion. The State appeals, claiming the district judge erred in finding that the State had failed to produce sufficient evidence at the preliminary examination to establish that the crimes of making a false writing had been committed.

Kraushaar was charged with 2 counts of making a false writing and 10 misdemeanor counts. The misdemeanor counts were subsequently dismissed and are not subject to this appeal. The first count charged:

> "On or about April 30, 1994, in Marshall County, Kansas, Steven A. Kraushaar, did knowingly, intentionally, unlawfully and feloniously *make a false writing* (as defined by K.S.A. 21-3711), to-wit: *notarized two signatures on a quit-claim deed*, acknowledging both signatories to the deed had appeared in front of him and signed the deed, *knowing it falsely stated a material matter*, to-wit: *only one person was present as signatory* and that *defendant intended to induce official action,* to-wit: the *notarized deed was to be filed*; contrary to the form of the statutes made and provided and against the peace and dignity of the State of Kansas." (Emphasis added.)

The second count charged:

> "On or about March 15, 1995, in Marshall County, Kansas, Steven A. Kraushaar did knowingly, intentionally, unlawfully and feloniously *make a false writing* (as defined by K.S.A. 21-3711), to-wit: defendant made or caused to be made a Proscuting Attorneys' Training Fund report, *knowing it falsely stated a material matter,* to wit: that *the expenses were properly encumbered in authorized training* of Steven A. Kraushaar as county attorney when it, in fact, included two extra days hotel and vacation in Philadelphia for defendant and his girlfriend, *charged* to the PATF *fund* and *with the intent of inducing official* action, to-wit: fulfilling the mandated reporting requirement concerning PATF reports, contrary to the form of the statutes made and provided and against the peace and dignity of the State of Kansas." (Emphasis added.)

The facts are undisputed. As to Count I, Yvonne Dunnigan requested Kraushaar, an attorney, to prepare a quitclaim deed. Kraushaar prepared the deed. Kraushaar explained to Mrs. Dunnigan that the deed required the signature of both her and her husband. She informed Kraushaar that her husband was unavailable. Krau-

shaar told her to take the deed to her husband, have him sign it, and return it. Mrs. Dunnigan returned the signed deed. Kraushaar was unaware that Mr. Dunnigan's signature had been forged. Even though Mr. Dunnigan was not present, Kraushaar notarized the deed. The deed was filed of record.

Count II relates to a trip taken by Kraushaar, the county attorney, to attend a legal conference in Philadelphia, Pennsylvania. Kraushaar stayed an additional two nights in Philadelphia after the conference. The State paid the hotel charges for those additional nights. (The statute of limitations had run on a possible theft or fraud charges when it was later discovered.)

Months later (and after Kraushaar had been reimbursed for travel expenses) Kraushaar prepared a form showing receipts and expenditures paid by the Prosecutors' Assistance Training Fund (PATF) as required by K.S.A. 28-170. This report is required by the legislature to track how travel expense money is spent. In the report, Kraushaar indicated that the expenditure was for the legal conference. Kraushaar failed to disclose that a portion of the expenditure was for hotel expenses after the conference concluded. Kraushaar filed the report. No further action by the State or Kraushaar was required.

After reviewing these facts, the district judge dismissed both charges against Kraushaar. The district judge observed that as to Count I, Kraushaar was without knowledge that the signature was a forgery and found that "[k]nowledge is an essential element of the crime of making a false writing." Relying upon *State v. Rios*, 246 Kan. 517, 792 P.2d 1065 (1990), the district judge noted that in *Rios*, the Supreme Court stated that the making of an instrument to cover up a theft, which crime is unknown to the victim, does not come within the statutory definition of "intent to defraud." The district judge said that intent under K.S.A. 21-3711 requires the defendant to have intended to deceive and induce that person "to assume, create, transfer, alter, or terminate a right, obligation, or power with reference to property." The district judge determined that "[t]here is no evidence with regard to the idea that this writing was made with the intent to induce official action" and dismissed Counts I and II.

A defendant will be bound over for trial if from the evidence presented at the preliminary examination it appears that a felony has been committed and there is probable cause to believe the defendant committed the felony. K.S.A. 22-2902(3). An appellate court conducts a de novo review of the evidence when considering a trial court's probable cause finding. See *State v. Martinez*, 255 Kan. 464, 465, 874 P.2d 617 (1994).

K.S.A. 21-3711 provides:

"Making a false writing is making or drawing or causing to be made or drawn any written instrument or entry in a book or account with knowledge that such writing falsely states or represents some material matter or is not what it purports to be, and with intent to defraud or induce official action.

"Making a false writing is a severity level 8, non-person felony."

As to Count I, the parties do not dispute that the defendant notarized a quitclaim deed without witnessing the signature of Mr. Dunnigan. In dismissing this charge, the district judge concluded that a notary's knowledge a signature was forged is an essential element of the crime. We disagree with the district judge's conclusion. Knowledge of the forged signature by the notary is not material to the crime charged in Count I of the complaint. What is material to the crime charged is defendant's false statement when notarizing the document *that he witnessed the signing of the document*. Kraushaar asserts that mere notarization does not induce action because when he notarized the deed he was unaware whether the quitclaim deed would be filed with the Register of Deeds office or cause the transfer of property.

Although *State v. Kee*, 238 Kan 342, 711 P.2d 746 (1985), was not cited by either party, it discusses whether the crime Kraushaar was charged with requires that the official action intended ultimately occur. Kee, an officer of a bank undergoing examination, arranged to have a person's signature forged on a loan extension agreement. The loan extension was to hide the fact that Kee had borrowed in excess of what a bank officer was permitted by regulation. Had the bank regulators discovered the excessive loans, they could have taken action against the bank. Kee's purpose for creating the false writing was to hide the loans and induce the regulator to take no action against the bank. However, at the time of

the false writing, Kee did not know whether the regulator would find the excessive loans or later return and continue the audit. K.S.A. 21-3711 does not require that the official action intended ultimately occur; it only requires that the official action be intended.

Thus, Kraushaar's argument he was unaware whether the deed would be filed is an incorrect statement of the requirements of the statute. All conveyances of real property must be acknowledged before a notary, a county clerk, a register of deeds, or a mayor or clerk of an incorporated city. Without an acknowledgement, the deed could not be recorded. See K.S.A. 58-2221. When notarizing the quitclaim deed, Kraushaar asserted that he witnessed a signing of a signature which he had not witnessed. Kraushaar, an attorney preparing the quitclaim deed, understood the purpose of a deed is to transfer title pursuant to K.S.A. 58-2211. K.S.A. 21-3711 states that making a false writing must be with "the intent to defraud or induce official action." There is no statutory requirement that the official action intended ultimately occur.

Improper Charge

I. Notarizing the Deed

In a criminal action, the trial court must not only have jurisdiction over the offense charged, but it must also have jurisdiction over the question which its judgment assumes to decide. *State v. Chatmon*, 234 Kan. 197, 205, 671 P.2d 531 (1983). Whether a court has jurisdiction over the offense in a particular case is determined from the allegations in the accusation. An information is the only vehicle by which a court obtains and has limits placed on its jurisdiction.

When there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless the legislature intended to make the general act controlling. *State v. Reed*, 254 Kan. 52, Syl. ¶ 1, 865 P.2d 191 (1993).

Kraushaar asserts there is a specific statute governing his conduct, and that statute is preferred over the general in the absence of clear legislative intent to allow prosecution under both. See *State*

*v. Kliewer*, 210 Kan. 820, 826-27, 504 P.2d 580 (1972). Kraushaar points out that K.S.A. 53-118 provides:

"(a) The secretary of state may refuse to appoint any person as a notary public or may revoke the appointment of any notary public upon any of the following grounds:

. . . .

"(3) revocation, suspension or denial of a professional license, if such revocation, suspension or denial was for misconduct, dishonesty or any cause substantially relating to the duties or responsibilities of a notary public;

. . . .

"(6) failure to exercise the powers and duties of a notary public in accordance with this act."

Kraushaar further cites K.S.A. 53-119, which provides:

"Any person injured by the failure of a notary public to faithfully perform any notarial act for which a bond is given under the laws of this state may sue on the bond in the person's own name in any court of competent jurisdiction to recover the damages the person may have sustained by such failure."

Appointment and qualification of a notary public are governed by K.S.A. 53-101 *et seq.* A notarial act is "any act that a notary public of this state is authorized to perform, and includes taking an acknowledgment, administering an oath or affirmation, taking a verification upon oath or affirmation, witnessing or attesting a signature, certifying or attesting a copy and noting a protest of a negotiable instrument." K.S.A. 53-502(a).

"Every person, before entering upon the duties of a notary public, shall file with the secretary of state an application for appointment as a notary public, which shall also include an oath of office and a good and sufficient bond to the state of Kansas in the sum of $7,500, with one or more sureties to be approved by the secretary of state. The bond shall be conditioned upon the faithful performance of all notarial acts in accordance with law." K.S.A. 53-102.

The Secretary of State may refuse to appoint any person as a notary public or may revoke the appointment of any notary public if such revocation, suspension, or denial was for misconduct, dishonesty, or any cause substantially relating to the duties or responsibilities of a notary public or for failure to exercise the powers and duties of a notary public in accordance with the act. Any person whose notary public appointment has been removed may not apply

for an appointment until the expiration of 4 years from the date of removal of such appointment. K.S.A. 53-118.

We disagree with Kraushaar's conclusion that the statutes he cites are criminal statutes. In Kansas, a crime is an act or omission defined by law for which, upon conviction, a sentence of imprisonment or fine, or both imprisonment and fine, is authorized. *State v. Boos*, 232 Kan. 864, Syl. ¶ 1, 659 P.2d 224, *cert. denied* 462 U.S. 1136 (1983). Each statute cited by Kraushaar provides for civil forfeiture and does not implicate the crime set forth in K.S.A. 21-3711.

Although not noted by the parties, K.S.A. 58-2218 specifically governs the acts alleged in the complaint. It states:

"*Any officer* [notary] who knowingly states a material untruth, in either of the certificates [a deed] herein contemplated, *may be indicted, and fined* in any sum not exceeding *the value of the property conveyed or otherwise affected by the instrument* on which such certificate is endorsed." (Emphasis added.)

While there has been no reported prosecution under K.S.A. 58-2218 since its enactment in 1868, it applies to the facts charged in the complaint.

A notarial officer's signature is required on the deed to convey property under K.S.A. 58-2211 and is material. Kraushaar, a notarial officer, stated he had witnessed a signature on a deed conveying property, knowing his certification that both parties signed the deed to be untrue. Under the facts alleged, Kraushaar should have been charged under K.S.A. 58-2218, a specific statute covering instruments conveying property rather than the more general K.S.A. 21-3711.

A notary who notarizes a deed and in doing so fails to faithfully perform any notarial act may be charged under K.S.A. 58-2218, which specifically governs this crime, rather than the general crime of making a false writing under K.S.A. 21-3711. Although the trial court was incorrect in determining there was no evidence to indicate defendant intended to induce official action, because the defendant was charged under K.S.A. 21-3711 rather than K.S.A. 58-2218, the dismissal of Count I was correct.

II. False Report

With respect to Count II, again, the crux of the dispute revolves around whether the report "was made with the intent to induce

official action." The district judge found there was no evidence that the report "was made with the intent to induce official action." The State argues that the report is required to comply with "statutorily mandated official action: to be filed in accordance with K.S.A. 28-170(a)." The State argued to the district judge:

"The state would note the alleged illegal act is the making and filing of the report. It is a non sequitur to hold, as the court does, that 'the report was filed months after the alleged illegal act.' The illegal act *was* the report. Clearly the court misapprehended the charges and the evidence involved.

"The court does simply state 'There is no evidence with regard to the idea that this writing was made with the intent to induce official action.' [Citation omitted.] This statement does not recognize that the only reason to prepare this report is to comply with a statutorily mandated official action: to be filed in accordance with K.S.A. 28-170(a)."

The State's argument fails to identify the official action the report was intended to induce. Instead, the State argues that the defendant was by statute required to file the report, the report filed was false, and, therefore, the crime was committed.

In *State v. Rios*, 246 Kan. 517, two Dillard's store managers were charged under 21-3711. They had been taking cash and filing false vouchers with the corporate headquarters to cover the thefts. The vouchers were not used to acquire the money; they were an accounting tool used by the defendants to avoid discovery of the prior theft.

In deciding that 21-3711 was not an appropriate statute with which to charge defendants, the *Rios* court stated:

"Dillard's was not induced and was not intended to be induced to part with the money shown on the voucher by presentation of the voucher. Dillard's had been deprived of the money shown on the voucher before the voucher was processed by Dillard's. Each voucher was created for and used to cover up the theft of the money shown on its face. Intent to defraud requires that the maker of the instrument intended to deceive another person and to induce such person, in reliance upon the deception, to assume, create, transfer, alter, or terminate a right, obligation, or power with reference to property." 246 Kan. at 530.

The *Rios* court observed that it may be argued that the coverup of each theft by means of a voucher allowed such theft to remain undiscovered and, hence, permitted the defendants to remain in the employ of Dillard's with the opportunity to commit new thefts.

However, the statutory definition of intent to defraud is not broad enough to include the facts alleged. 246 Kan. at 530. The *Rios* court concluded:

"In order to convict a defendant of theft by deception under K.S.A. 21-3701(b), the State must prove that the defendant, with the required intent, obtained control over another's property *by means of* a false statement or representation. To do so, the State must prove that the victim relied in whole or in part upon the false representation in parting with his or her property." 246 Kan. 517, Syl. ¶ 2.

The facts in *Rios* are indistinguishable from the alleged facts in the State's complaint charging Kraushaar. No money changed hands as a result of the PATF report. The report was an accounting procedure. Its falsity simply covered up any prior wrongdoing by defendant. K.S.A. 21-3711 punishes false writings intended to induce official action, not false writings made in response to statutory requirements. The complaint filed does not satisfy the requirements of K.S.A. 21-3711.

Dismissal of the charges is affirmed.