(184 P.3d 959)
No. 96,878

STATE OF KANSAS, *Appellee*, v. JOHN D. RUTHERFORD, *Appellant*.

Opinion filed June 6, 2008.

*B. Joyce Yeager,* of Yeager Law Firm L.L.C., of Overland Park, for appellant.

*Frederick B. Campbell,* county attorney, and *Paul J. Morrison,* attorney general, for appellee.

Before HILL, P.J., GREEN and STANDRIDGE, JJ.

STANDRIDGE, J.: John D. Rutherford appeals his convictions of aggravated criminal sodomy and aggravated indecent liberties with a child and argues the district court erred (1) by finding probable cause at the preliminary hearing to bind him over for trial; (2) by convicting him at trial of aggravated indecent liberties with a child; and (3) by allowing age of the victim to be used in sentencing as an aggravating factor to support an upward durational departure. We reject all three of Rutherford's arguments. First, we find any error that may have existed at the preliminary hearing stage was harmless given a lack of evidence that such error caused prejudice at trial. Second, we find there was sufficient evidence at trial to support Rutherford's conviction of indecent liberties with a child. Finally, we find it unnecessary to determine whether age of the victim erroneously was considered as an aggravating factor because there are two other aggravating factors that support the upward durational departure in sentencing. Accordingly, we affirm.

*Factual Background*

Rutherford was convicted of aggravated criminal sodomy in violation of K.S.A. 21-3506(a)(Furse) and aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(Furse). Ruth-

erford's convictions are based on contact he had with C.R., the daughter of his girlfriend, B.R. Rutherford and B.R. started dating during the end of January 2005. Rutherford moved in with B.R. and C.R. around March or April 2005.

C.R. was born on May 7, 2001. C.R. has development delays and functions at a level similar to a child who is 2 years old or younger. C.R. called Rutherford "Bubby," because she was unable to say his name. Rutherford baby-sat C.R. when C.R. got home from school and other times when B.R. was gone with friends.

Rutherford told B.R. that he liked girls with thick and puffy lips and C.R. has puffy lips, that C.R. was "kissable," that C.R. would "make a guy lucky," and that if C.R. were older, he would marry her. B.R. observed Rutherford kiss C.R. on the lips, even after B.R. told him to stop because C.R. did not like it. B.R. said Rutherford would kiss C.R. "like you would kiss a girlfriend." Rutherford also gave baths to C.R. Rutherford wanted to give C.R. a bath "all the time." B.R. found Rutherford in C.R.'s bedroom two or three times in the middle of the night. B.R. testified that on a couple of occasions, Rutherford changed C.R.'s sheets in the middle of the night, allegedly because C.R. had wet the bed.

In summer 2005, B.R. noticed rashes around C.R.'s vagina and bruises on the inside of C.R.'s thighs. When B.R. called the school regarding the bruising, school officials told B.R. that they had already contacted the Kansas Department of Social and Rehabilitation Services (SRS). School officials suggested she have C.R. checked to make sure C.R. had not been touched inappropriately. They also told B.R. that C.R. was screaming during nap time and in the bathroom and that she was not playing with other children.

Ronda McCord, the assistant director of Anderson County Head Start, also noticed oval bruises on C.R.'s inner thighs. McCord thought the bruises looked as though they were made by fingers. When McCord asked C.R. what happened, C.R. responded, " 'Bobby hurt me.' "

Other individuals also heard C.R. comment that Rutherford had hurt her. First, Sheryl Urquhart, a teacher's aide at Anderson County Head Start, said she heard C.R. state, " 'Poppy hurt me,' " on the bus. Next, Stacie Tush, a social worker with SRS, said several

times during an interview C.R. stated, "Bubby hurt my butt." Jennifer Cline, a para educator at Parker Elementary, said she heard C.R. say, " 'Bobby hurts me,' " on several occasions. Finally, Janelle Meyers, an early childhood special education teacher at Parker Elementary, stated that on several occasions she heard C.R. say, " 'Bobby hurt me.' "

B.R. asked Rutherford to move out of her house on October 31, 2005, after C.R. reported to her that Rutherford had slapped her in the face. C.R. also told her mother that Rutherford was touching her and she did not like him touching her. B.R. filed for a protection from abuse order because of the slap and her heightened concerns about Rutherford touching C.R. inappropriately. Although B.R. later moved to dismiss the order, she ended the relationship with Rutherford because she was afraid of his temper and C.R. was upset around him.

After Rutherford left, C.R. told her mother that she could not sleep in her room because "Bubby is in that room." C.R. became afraid when she heard the name John and told her mother that " 'John hurt me' " and that Rutherford "touched her on her behind."

On November 10, 2005, C.R. was examined by Dr. Mary Elizabeth Moffatt at Children's Mercy Hospital. Dr. Moffatt, a medical physician specializing in pediatric emergency medicine, obtained C.R.'s medical history from B.R. and did an extensive physical examination.

From her examination of C.R., Dr. Moffatt found four physical conditions about which she was worried. First, she found a flat, round spot, red in color, on C.R.'s clitoral hood. Dr. Moffatt testified that this coloration indicated no specific abuse, but this area of the body was usually light pink in color. Second, Dr. Moffatt found an irregular "n" shaped anal opening with a horizontal notch. Dr. Moffatt testified that such a notch was not usually the result of natural causes, but could have resulted from prior medical procedures, accident trauma, or Crohn's disease—none of which was present in C.R.'s medical history. Third, Dr. Moffatt found three small round indented areas in the anus that were possibly caused by trauma. Fourth, Dr. Moffatt found a darker red color on the

right side of C.R.'s anal opening. The combined findings made Dr. Moffatt highly suspicious of child sexual abuse.

The next week, Paris Stahl, a deputy with the Anderson County Sheriff's Department, and John Leinweber, a police officer for the city of Garnett, interviewed Rutherford. Rutherford changed his statements during the interview. At first, Rutherford stated he had never disciplined or bathed C.R., but he later admitted he had disciplined and bathed C.R. Rutherford further admitted to kissing C.R. often on the lips and to telling B.R. that C.R. had pretty lips and would be a good kisser. Rutherford also admitted that the way he kissed C.R. may have been inappropriate. Finally, Rutherford admitted that he could have hurt C.R. when he gave her a bath with a "Sponge Bob thing."

Serena Wecker, a social worker with SRS, interviewed C.R. on November 16, 2005. When she showed C.R. a drawing of children with no clothes and discussed types of touching, C.R. stated: " 'Bobby hurt me. Mommy stopped it.' " Wecker testified that C.R. said " 'he hurt me' " and pointed to her bottom a couple of times throughout the interview.

After being charged with aggravated criminal sodomy and aggravated indecent liberties with a child, Rutherford was detained pending trial. While in jail, Rutherford told fellow inmates Jeremy Hermreck and William Blomquist that the little girl had "rips and tears," but she was mentally challenged so she would be unable to testify against him. Rutherford told Blomquist that he and C.R. cared for each other and had plans to get married. Blomquist thought Rutherford must have been referring to C.R.'s mother, so he asked Rutherford to clarify. Rutherford repeated that he was going to marry C.R., "the little four year old." Rutherford went on to explain that the sexual activity with C.R. would not be relevant once the two of them were married.

*Procedural History*

On April 3, 2006, the district court judge in this case granted Rutherford's motion in limine, which prohibited introduction of any evidence at trial of Rutherford's prior conviction for aggravated indecent solicitation of a child and his status as a registered sex

offender. The case went to trial on April 26, 2006, and Rutherford was convicted of aggravated criminal sodomy and aggravated indecent liberties with a child.

In a separate proceeding after trial, and pursuant to the State's previously filed motion for an upward durational departure from the presumptive sentence, the district court instructed the jury with respect to three aggravating factors the State argued existed in the case: (1) C.R. was particularly vulnerable due to age, which was known or should have been known to Rutherford, (2) C.R. was particularly vulnerable due to reduced mental capacity, which was known or should have been known to Rutherford, and (3) Rutherford's conduct during the commission of the crime manifested excessive brutality to C.R. The jury found all three aggravating factors existed in this case.

The district court judge sentenced Rutherford to an upward durational departure of 324 months' imprisonment for his criminal sodomy conviction. The judge imposed an additional 61 months' imprisonment for Rutherford's conviction of aggravated indecent liberties with a child. The two sentences were ordered to be served concurrently. Rutherford timely appeals.

*Sufficiency of Evidence at Preliminary Hearing to Bind Rutherford Over for Trial*

Rutherford argues the district court erred when it bound him over for trial, because there was insufficient evidence presented at the preliminary hearing showing C.R. was injured by Rutherford. In response, the State argues there was sufficient evidence presented and, even if there was not, Rutherford implicitly consented to proceed to trial because he failed to lodge a legally sufficient motion to dismiss as required by K.S.A. 22-3208.

As both parties contend, this court exercises a de novo standard of review when determining whether the evidence introduced at a preliminary hearing was sufficient to establish probable cause to believe that a defendant committed a charged crime. Rutherford cites to the case of *State v. Kraushaar*, 264 Kan. 667, 670, 957 P.2d 1106 (1998), for this standard of review. The procedural posture of this case, however, differs significantly from that of *Kraushaar*

and other cases applying the de novo standard of review to evidence presented at the preliminary hearing. Given this difference, we find the de novo standard of review is inappropriate here.

In *Kraushaar*, the district court dismissed charges against the defendant because there was insufficient evidence presented at the preliminary hearing to support a finding of probable cause. There was no jury trial. The State appealed this ruling, and this court applied a de novo standard of review regarding the sufficiency of evidence presented at the preliminary hearing. Here, after the preliminary hearing, Rutherford ultimately was found guilty of all charges against him at a jury trial. Notably, our Supreme Court has set forth the legal standard for reviewing alleged errors at the preliminary hearing *after a defendant has stood trial and been convicted*: "[W]here an accused has gone to trial and been found guilty beyond a reasonable doubt, any error at the preliminary hearing stage is harmless unless it appears that the error caused prejudice at trial." *State v. Butler*, 257 Kan. 1043, 1062, 897 P.2d 1007 (1995). The legal issue presented to this court for determination under the circumstances presented here, then, is whether any error at Rutherford's preliminary hearing caused Rutherford prejudice at trial.

Rutherford argues that at the preliminary hearing, the State's case was inappropriately based on Rutherford's prior conviction and his status as a registered sex offender, and there was no other evidence presented at the preliminary hearing to support the charges against him. Without deciding whether the finding of probable cause at the preliminary hearing was based solely on Rutherford's prior conviction and his status as a registered sex offender, we find pursuant to *Butler* that even if true, any such error was harmless. This is because there is no evidence the alleged error caused prejudice to Rutherford at trial. More specifically, the district court judge in this case granted Rutherford's motion in limine and prohibited introduction of any evidence at trial of Rutherford's prior conviction and his status as a registered sex offender. Notwithstanding exclusion of this evidence, Rutherford ultimately was convicted by a jury on all counts. Accordingly, even if the prior conviction and the sex offender registration were the only evidence

presented at the preliminary hearing to support a finding of probable cause, the district judge's subsequent decision to prohibit such evidence at trial precludes any finding of prejudice.

*Sufficiency of Evidence at Trial to Convict Rutherford of Aggravated Indecent Liberties with a Child*

Rutherford alleges two errors with respect to sufficiency of evidence for the aggravated indecent liberties charge. First, Rutherford claims the district court erred in failing to provide the jury with a definition of "lewd fondling" or "lewd touching" in the jury instructions. Second, Rutherford claims that the act of kissing C.R. is insufficient to support a finding that he engaged in lewd fondling or touching done with the intent to arouse or to satisfy sexual desires.

"When the sufficiency of the evidence is reviewed in a criminal case, this court must consider all of the evidence, viewed in a light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006) (citing *State v. Hayden*, 281 Kan. 112, 132, 130 P.3d 24 [2006]).

Under K.S.A. 21-3504(a)(3)(A)(Furse), the State was required to prove beyond a reasonable doubt at trial that C.R. was under 14 years of age and Rutherford engaged in lewd fondling or touching of C.R. or himself, done with the intent to arouse or to satisfy the sexual desires of either C.R. or himself, or both. The State confirms it relied on Rutherford's kissing C.R. as the act to support the charge of aggravated indecent liberties with a child.

As a preliminary matter, Rutherford claims the district court erred in failing to provide the jury with a definition of "lewd fondling" or "lewd touching" in the jury instructions. Notably, however, Rutherford did not request such an instruction or object to the trial court's failure to give it. When there has been no request for an instruction and no objection to a failure to give an instruction, this court must determine on appeal whether the failure to give the instruction was "clearly erroneous." K.S.A. 22-3414(3). " 'Instructions are clearly erroneous only if the reviewing court is

firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. [Citation omitted.]' [Citation omitted.] " *State v. Trotter*, 280 Kan. 800, 805, 127 P.3d 972 (2006).

In *State v. Wells*, 223 Kan. 94, 98, 573 P.2d 580 (1977), the Kansas Supreme Court found that the term "lewd" as used in K.S.A. 21-3503(a) (indecent liberties with a child) has a well-understood meaning. More specifically, the court found the terms "lewd fondling" or "lewd touching" imply a type of activity exhibiting a depraved or lascivious intent:

"The word 'lewd' has an unmistakable meaning which is very well and generally understood. The common definition of lewd may be found in Webster's Third New International Dictionary (p. 1301) where it is defined as sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; indecent, obscene, salacious. Similar definitions may be found in practically any standard dictionary." *Wells*, 223 Kan. at 98.

We agree that the term "lewd" as a modifier of fondling or touching has a well-understood meaning as used in the indecent liberties with a child statute (K.S.A. 21-3503). To that end, we also find "lewd" has a well-understood meaning as used in the aggravated indecent liberties with a child statute (K.S.A. 21-3504) at issue in this case. When interpreting statutes, ordinary words are given their ordinary meanings. *State v. Paul*, 285 Kan. 658, 661, 175 P.3d 840 (2008). It appears that the jury here exercised reason and common sense to attribute an ordinary definition to the term. For these reasons, we find it highly unlikely that the jury would have rendered a different verdict if the court had provided the jury with a definition of lewd fondling or touching in the instructions. Accordingly, we find no error in the instruction given by the court, which correctly defined the elements of the crime.

Next, Rutherford claims that the act of kissing C.R. is insufficient to support a finding that he engaged in lewd fondling or touching done with the intent to arouse or to satisfy sexual desires. Whether kissing qualifies as lewd fondling or touching turns upon the circumstances of the case. Lewd fondling or touching does not require contact with the sex organs. *Wells*, 223 Kan. at 97. The Kansas Supreme Court has construed "lewd fondling or touching" as

that which "undermine[s] the morals of the child, which is so clearly offensive as to outrage the moral senses of a reasonable person, and which is done with the specific intent to arouse or to satisfy the sexual desires of either the child or the offender or both." 223 Kan. at 98.

Whether a touching is lewd depends upon the totality of the circumstances and is a question for the jury. *State v. Stout*, 34 Kan. App. 2d 83, 87-88, 114 P.3d 989, *rev. denied* 280 Kan. 991 (2005). Accordingly, whether the action offends the moral senses of a reasonable person is a determination left to the jury. 34 Kan. App. 2d at 89; *State v. Gilley*, 5 Kan. App. 2d 321, 324, 615 P.2d 827, *rev. denied* 228 Kan. 807 (1980).

With regard to arousal, this court further has held that proof of actual arousal is not required. Intent to arouse the sexual desires of the victim or the defendant is sufficient, which may be shown by circumstantial evidence. *Stout*, 34 Kan. App. 2d at 89; *Gilley*, 5 Kan. App. 2d at 324. To that end, an appellate court's review of the sufficiency of the evidence includes circumstantial evidence, which can support even the gravest of convictions. *State v. Huff*, 33 Kan. App. 2d 942, 945, 111 P.3d 659 (2005).

In this case, we find there was sufficient evidence to support a rational jury's belief that Rutherford engaged in lewd fondling or touching done with the intent to arouse or to satisfy sexual desires. Rutherford admitted that the way he kissed C.R. may have been inappropriate. There was evidence that Rutherford kissed C.R. despite being asked to stop, that Rutherford kissed C.R. on the lips, that Rutherford told other adults that C.R. had pretty lips and would be a good kisser because guys like full lips, and that Rutherford kissed C.R. "like you would kiss a girlfriend."

Moreover, while awaiting trial, Rutherford told another inmate that he and C.R. were planning on getting married. The other inmate thought Rutherford must have been referring to C.R.'s mother so he asked Rutherford to clarify. Rutherford repeated that he was going to marry C.R., "the little four year old." Rutherford went on to explain that the sexual activity with C.R. would not be relevant once the two of them were married.

Based on the evidence presented at trial as described above, we find there is sufficient evidence to support a jury finding that Rutherford kissed C.R. in a manner that amounts to lewd fondling and touching with the intent to arouse his or C.R.'s sexual desires. See *State v. Bryan*, 281 Kan. 157, 167, 130 P.3d 85 (2006) (holding that "[o]nce the jury has decided, an appellate court does not determine whether the evidence is incompatible with any reasonable hypothesis except guilt"). Thus, a reasonable jury could have concluded beyond a reasonable doubt from this evidence that Rutherford engaged in indecent liberties with a child.

*It is Unnecessary for this Court to Determine Whether the District Court Erred in Allowing Age of the Victim to be Considered as an Aggravating Factor Supporting an Upward Durational Departure in Sentencing*

Rutherford was convicted by a jury of aggravated criminal sodomy pursuant to K.S.A. 21-3506(a)(1)(Furse), an element of which requires the victim to be under 14 years of age. Because the State had filed a motion for an upward durational departure from the presumptive sentence, the court went on to hold a separate sentencing proceeding with respect to the existence of any aggravating factors. At this supplemental proceeding, the jury was presented with evidence regarding these aggravating factors.

Upon deliberation after this supplemental proceeding, the jury found three aggravating factors supported an upward durational departure in sentencing: (1) C.R. was particularly vulnerable due to age, which was known or should have been known to Rutherford, (2) C.R. was particularly vulnerable due to reduced mental capacity, which was known or should have been known to Rutherford, and (3) Rutherford's conduct during the commission of the crime manifested excessive brutality to C.R.

On appeal, Rutherford challenges only the use of C.R.'s age as an aggravating factor to support an upward durational departure in sentencing. Rutherford argues the district court erred by allowing age to be considered as an aggravating factor to support an upward durational departure in sentencing when he already had been found guilty of aggravated criminal sodomy pursuant to

K.S.A. 21-3506(a)(1)(Furse), an element of which requires the victim to be under 14 years of age.

Appellate review of an upward durational departure in sentencing is limited to whether the sentencing court's findings of fact and reasons justifying the departure: (1) are supported by evidence in the record, and (2) constitute substantial and compelling reasons for a departure. K.S.A. 21-4721(d). Whether the facts relied upon by the sentencing court constitute substantial and compelling reasons for an upward durational departure is a question of law, providing an appellate court with unlimited review. *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 (2001).

Notably, we find it unnecessary here to determine whether age should have been considered as an aggravating factor. This is because the jury in this case unanimously found, beyond a reasonable doubt, that two other aggravating factors besides age existed: (1) vulnerability due to reduced mental capacity of the victim; and (2) excessive brutality by Rutherford. On appeal, Rutherford does not challenge use of either one of these two aggravating factors to support the upward durational departure in sentencing. "As long as one or more of the factors relied upon is in fact substantial and compelling, the departure sentence will be affirmed." *State v. Ippert*, 268 Kan. 254, 261, 995 P.2d 858 (2000) (citing *State v. Gideon*, 257 Kan. 591, 627, 894 P.2d 850 [1995], and *State v. Zuck*, 21 Kan. App. 2d 597, 606, 904 P.2d 1005, *rev. denied* 258 Kan. 863 [1995]). Accordingly, we affirm the departure sentence based on the two remaining aggravating factors.

Affirmed.