NOT DESIGNATED FOR PUBLICATION

No. 126,606

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BOBBY JOE BROWN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed July 18, 2025. Affirmed in part, reversed in part, vacated in part, and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., COBLE and BOLTON FLEMING, JJ.

PER CURIAM: Bobby Joe Brown appeals his conviction and sentence related to one count of aggravated indecent liberties with a child. Brown raises four issues on appeal. First, Brown argues that there was insufficient evidence of lewd fondling or touching to support his conviction for aggravated indecent liberties with a child. Second, Brown maintains that the district court abused its discretion by summarily denying Brown's pro se motion alleging ineffective assistance of counsel, prejudice, and bias. Third, Brown argues that the district court abused its discretion in denying Brown's

1

motion for a departure sentence. Finally, Brown alleges that the district court erred by including restitution in the journal entry when it did not order Brown to pay restitution from the bench at sentencing.

After careful consideration of the record, we hold that as to the first issue, there is sufficient evidence of lewd fondling or touching to support Brown's conviction. However, as to the second issue, we find that the district court abused its discretion by summarily denying Brown's pro se motion raising issues with his counsel. Third, we hold that the district court did not abuse its discretion in denying Brown's motion for departure at sentencing. Finally, we find the district court erred in its inclusion of restitution in the journal entry of sentencing when none was ordered during the sentencing hearing. Accordingly, we affirm in part, reverse in part, vacate in part, and remand with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 2022, the State charged Bobby Joe Brown with one count of aggravated criminal sodomy and one count of aggravated indecent liberties with a child. The charges pertained to conduct alleged by two young girls, P.F. and I.S., who were related. Brown was a family friend who regularly babysat P.F. and occasionally watched I.S. as well.

Brown initially waived his right to a preliminary hearing and pled not guilty to the crimes charged. But 10 days before trial, Brown filed a pro se motion raising concerns of ineffective assistance of counsel, alleging that he did not fully understand the implications of waiving his preliminary hearing, and that trial counsel "may have created prejudice and bias" in Brown's case. The district court summarily denied Brown's pro se motion without conducting any inquiry into his allegations. The case then went on to a jury trial in May 2023.

During the trial, the State presented evidence, including testimony from I.S., P.F., various family members of both girls, and Child Advocacy Center (CAC) employees who interviewed the girls. P.F. alleged that Brown had touched and licked P.F.'s vagina on many occasions from when she was six to nine years old (conduct supporting the charge of aggravated criminal sodomy). I.S. alleged that while tickling I.S., Brown had touched her vagina over her clothes and left his hand paused there on multiple occasions from when she was 8 to 12 years old (conduct supporting the charge of aggravated indecent liberties with a child). Family members of both girls as well as CAC employees testified about the girls sharing the same allegations with them in conversations and forensic interviews. Brown also testified and denied both girls' allegations against him.

After substantial time deliberating, the members of the jury all agreed that they could not reach a verdict on the charge of aggravated criminal sodomy against P.F., so the district court declared a hung jury on that charge. But the jury did reach a verdict on the charge of aggravated indecent liberties with a child against I.S.—finding Brown guilty.

Following Brown's guilty verdict on aggravated indecent liberties with a child, his trial counsel filed a motion for judgment of acquittal or new trial, arguing that there was insufficient evidence to show Brown intended to sexually gratify himself. The district court denied this motion at Brown's sentencing hearing in June 2023, finding that there was sufficient circumstantial evidence to infer sexual intent. The district court also considered Brown's motion for a departure sentence, which the court denied. The district court then sentenced Brown to a hard 25 sentence. And while the district court did not order any restitution at the sentencing hearing, the journal entry of judgment reflected $520 in restitution. Brown timely appeals.

3

THERE WAS SUFFICIENT EVIDENCE OF LEWD FONDLING OR TOUCHING TO SUPPORT BROWN'S CONVICTION FOR AGGRAVATED INDECENT LIBERTIES WITH A CHILD

Brown argues that there was insufficient evidence to support the jury's finding that he touched or fondled I.S. in a lewd manner—a required element for his conviction of aggravated indecent liberties with a child.

*Standard of Review*

Brown raised a different sufficiency argument before the district court, arguing that there was insufficient evidence that Brown intended to sexually gratify himself. But "sufficiency of the evidence issues are not constrained by a preservation requirement." *State v. Gutierrez-Fuentes*, 315 Kan. 341, 348, 508 P.3d 378 (2022). A criminal defendant need not challenge the sufficiency of the evidence at the trial level to preserve the issue for appeal. 315 Kan. at 348.

When an appellant raises a sufficiency challenge in a criminal case, "the appellate court must review all the evidence in a light most favorable to the prosecution to determine if a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." 315 Kan. at 348. In doing so, appellate courts "do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." 315 Kan. at 348.

*Discussion*

*Evidence of Brown touching I.S.*

Here, the State charged Brown with aggravated indecent liberties with a child, which required the State to prove that Brown committed "*lewd fondling or touching* of

the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both" and that the child was "under 14 years of age" and the offender was "18 years of age or older." (Emphasis added.) K.S.A. 21-5506(b)(3)(A), (c)(3).

I.S. testified at trial that Brown would tickle her all over her body and then touch her in her "private area." I.S. agreed that "private area" referred to her "vagina." I.S. explained that "then [Brown would] like hold it, and then he would—like he'd pause." According to I.S., Brown would be physically touching her when he paused his hand over her vagina, but the touch was over her clothing. Brown's hand would stay in place for "a second or two." I.S. explained that she would then give Brown a weird look, and Brown would say "I'm sorry. I didn't mean to." Brown would then stop tickling I.S. for the rest of the day. I.S. testified that Brown touched her like this between three to four times in total, ranging from when she was 8 through 12 years old.

The State also presented testimony from other people who I.S. told about Brown touching her:

- One of I.S.'s friends testified that I.S. confided that Brown had touched her over her underwear repeatedly, always saying "sorry" after each time, but then doing it again. The friend clarified that over the underwear meant "on her vagina." And that the friend thought the repeated touching occurred over a period of time, not all at once.
- I.S.'s father testified that I.S. told him Brown would tickle her and then touch her in her "private areas," and then when I.S. would give Brown a weird look, he would stop and say "I'm sorry. I'm sorry. I didn't mean to."
- I.S.'s mother testified that I.S. said Brown would tickle I.S. and then touch her "private" over her clothes and then say something like "oh, I'm sorry, I'm sorry, I'm sorry."

- The State also played a video of I.S. being interviewed by Taylor Johnson, a forensic interviewer at the CAC, where I.S. reported Brown touching her in the same manner.

Brown also testified at trial, agreeing that he would tickle I.S. underneath her arms, ribs, and inner thighs. Brown admitted to once accidentally touching I.S.'s breasts while tickling or playing with her. But Brown testified that he was not aware of ever touching I.S. on her vagina and that he would never deliberately touch anyone in that area. Brown also testified that he was 62 years old at the time of trial.

The State's evidence supports a finding that Brown touched I.S.'s vagina over her clothing on three to four occasions, pausing with his hand in place for a couple of seconds each time, and then removing his hand once I.S. gave Brown a "weird look." But Brown argues that this action does not meet the definition of lewd fondling or touching.

*Definition of lewdness in Kansas*

In *State v. Ta*, 296 Kan. 230, 290 P.3d 652 (2012), our Supreme Court considered whether touching two young girls' faces, hair, arms, and legs amounted to lewd fondling or touching. Ta had approached the girls outside of a movie theater and touched their faces and hair and rubbed his hand on their arms and upper legs. 296 Kan. at 231-32. Ta later admitted to police officers that he "'wanted to have sex with children'" and that he felt he was a danger because he "'was having a difficult time controlling his urges and they were becoming stronger.'" 296 Kan. at 233. A jury convicted Ta of two counts of aggravated indecent liberties with a child. 296 Kan. at 233. But on appeal, Ta claimed that there was insufficient evidence to prove that he engaged in any lewd fondling or touching. 296 Kan. at 233.

Our Supreme Court ultimately agreed with *Ta*, explaining that whether an action amounts to lewd fondling or touching must be determined separately from whether that action was done with the intent to arouse. 296 Kan. at 240-42. Instead, "whether a touching is lewd should be determined by considering the common meaning of the term 'lewd,' that is whether a touching is 'sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; indecent, obscene, or salacious.'" 296 Kan. at 242-43. When determining whether the touching meets the provided definition, "a factfinder should consider whether the touching 'tends to undermine the morals of a child [and] . . . is so clearly offensive as to outrage the moral senses of a reasonable person.'" 296 Kan. at 243. This analysis should include consideration of the surrounding circumstances. 296 Kan. at 243.

Within this framework, our Supreme Court found that while Ta's touching of the children was "awkward and strange to the point the mothers were understandably uneasy," the touches did not meet the definition of lewdness because they were not indecent, obscene, salacious, unchaste, or licentious, nor did the touches tend to undermine the morals of the children or outrage the moral sense of a reasonable person. 296 Kan. at 243. Thus, the court reversed Ta's convictions for aggravated indecent liberties with a child. 296 Kan. at 243.

Here, Brown relies heavily on *Ta* and another case, *State v. Co*, No. 122,797, 2022 WL 816528 (Kan. App.) (2022) (unpublished opinion), to argue that there was insufficient evidence that his own touching of I.S was lewd. In *Co*, another panel of this court found that touching the inside of someone's clothed leg just above the knee does not meet the definition of lewd fondling or touching. 2022 WL 816528, at *6-7. Brown claims that like these two cases, the trial evidence supported "a finding that [Brown] briefly touched a fully clothed individual in a manner that would be extremely disconcerting to a responsible authority figure. But, also like *Ta* and *Co*, this case's

7

alleged inappropriate touching was not so clearly offensive as to outrage the moral senses of a reasonable person."

But as the State points out in its brief, Brown's touching differed from that in *Ta* and *Co* in a fundamental way—Brown touched I.S.'s clothed vagina, not just her clothed arm or leg. If Brown's conduct had stopped even at tickling I.S.'s inner thigh—which Brown admitted to doing—he may have been correct that there was insufficient evidence of lewdness. See *Ta*, 296 Kan. 243. But Brown did not stop at tickling I.S.'s inner thigh. Instead, testimony showed that Brown would then move his hand to touch I.S.'s vagina over her clothing and hold his hand paused in place for a couple of seconds, only removing his hand once I.S. gave Brown a "weird look." This is inherently different from those touches in *Ta* and *Co*, which never included any "private" areas such as one's vagina.

Kansas appellate courts have never required that either the victim or the offender be unclothed to find sufficient evidence of lewdness. For example, in 1987, the Kansas Supreme Court found that a defendant's actions of kissing a child and pulling her onto a bed, then later fondling and touching "her buttocks and pubic area through her clothes" constituted lewd conduct. *State v. Ramos*, 240 Kan. 485, 486, 731 P.2d 837 (1987), *superseded by statute on other grounds as stated in State v. Hutchcraft*, 242 Kan. 55, 744 P.2d 849 (1987); see also *State v. Reed*, 300 Kan. 494, 501-02, 332 P.3d 172 (2014) (sufficient evidence of lewdness when defendant "'humped'" two different girls by rubbing his clothed groin on their clothed buttocks).

Brown agrees that Kansas precedent does not categorically require that a defendant have touched the victim under their clothing to meet the definition of lewdness. But Brown claims the cases illustrated above included additional factors such as "intimate kissing and/or protracted fondling or rubbing of a clothed private part." And thus, Brown argues his own action of touching I.S.'s vagina over her clothes without

some other added action like kissing or rubbing his hand is not lewd on its own. But Brown's argument "attempt[s] to recast the elements of the offense by adding requirements not found in the statutory definition of aggravated indecent liberties with a child under the age of 14." *Reed*, 300 Kan. at 500. The legislature did not restrict the prohibited conduct by listing body parts that could or could not be fondled or touched, and also did not specify a type of contact or manner of touch that an offender must use for there to be a violation of the statute. See 300 Kan. at 500.

Lastly, Brown points to a Florida case which found that touching the minor victims' "clothed buttocks" for a "split-second" was not sufficient evidence to show a defendant acted lewdly. *M.L.C. v. State*, 875 So.2d 810, 811 (Fla. Dist. Ct. App. 2004). Aside from being nonbinding on this panel, this opinion holds no persuasive weight for two reasons. First, the opinion interprets a different statute—section 800.04 of the Florida Statutes—which actually defines lewd touch by listing specific body parts, unlike K.S.A. 21-5506(b)(3)(A), the statute under which Brown was charged. See Fla. Stat. § 800.4(5)(a) (2002). And second, the alleged Florida offender, M.L.C, was a 12-year-old boy when he touched two 12- and 13-year-old girls' buttocks. 875 So.2d at 811. Accordingly, this Florida decision is not persuasive because it does not follow a similar statutory scheme and is not factually similar to Brown's case.

*A rational jury could have found Brown's touching to be lewd.*

Brown argues that his touching of I.S. was not outrageous enough to be considered lewd, and thus there was insufficient evidence to support his aggravated indecent liberties with a child conviction. Other panels of this court have found that "[w]hether a touching is lewd depends upon the totality of the circumstances and is a question for the jury. Accordingly, whether the action offends the moral senses of a reasonable person is a determination *left to the jury*. [Citations omitted.]" (Emphasis added.) *State v. Rutherford*, 39 Kan. App. 2d 767, 776, 184 P.3d 959 (2008); *State v. Freeman*, No. 124,111, 2022

9

WL 1906918, at *3 (Kan. App.) (2022) (unpublished opinion); *State v. Walter*, No. 124,115, 2022 WL 1906938, at *3 (Kan. App.) (2022) (unpublished opinion). For a sufficiency of the evidence review, all of the evidence presented to the jury must be viewed in a light most favorable to the prosecution to determine if a rational jury could have found Brown guilty of lewd fondling or touching. See *Gutierrez-Fuentes*, 315 Kan. at 348.

In this case, evidence supported a finding that Brown touched I.S.'s vagina over her clothing and held his hand paused in place for a couple of seconds, removing his hand once I.S. gave Brown a "weird look" on three to four occasions. And consistent with Kansas law, the jury was given a pattern instruction in which the term "lewd fondling or touching" was defined as "fondling or touching in a manner which tends to undermine the morals of a child and is so clearly offensive as to outrage the moral senses of a reasonable person. Lewd fondling or touching does not require contact with the sex organ of one or the other." See PIK Crim. 4th 55.121 (Aggravated Indecent Liberties—Child Less Than 14). The jury was thus aware of the proper definition of lewdness. Viewing the evidence in the light most favorable to the State, it was rational for the jury to have concluded that Brown's actions undermined the morals of I.S. and were so clearly offensive as to outrage the moral senses of a reasonable person. Thus, there was sufficient evidence of lewd fondling or touching to support Brown's conviction.

THE DISTRICT COURT ABUSED ITS DISCRETION IN SUMMARILY DENYING BROWN'S PRO SE MOTION RAISING DISSATISFACTION WITH HIS COUNSEL

Brown argues that the district court abused its discretion when it did not inquire into the allegations of ineffective assistance of counsel, prejudice, and bias that Brown raised in his pro se motion before trial.

*Standard of Review*

A district court's inquiry into potential conflict of interest is reviewed for abuse of discretion. *State v. Brown*, 300 Kan. 565, 570-71, 331 P.3d 797 (2014). A district court abuses its discretion if the decision was: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. 300 Kan. at 571.

This analysis necessarily begins by recognizing that both the United States and Kansas Constitutions guarantee a criminal defendant's right to have the assistance of counsel. 300 Kan. at 574. This constitutional right "'requires more than the presence of an attorney; it guarantees the right to *effective* assistance from the attorney.'" 300 Kan. at 574-75.

Of course, the right to effective assistance of counsel does not guarantee that a criminal defendant may choose which attorney will be appointed to represent them. For that reason, if a defendant seeks substitute counsel, they must demonstrate "'justifiable dissatisfaction'" with their appointed counsel—which may be done "'by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant.'" 300 Kan. at 575. The defendant bears the burden of supplying "'an articulated statement of attorney dissatisfaction'" which will then "'trigger the district court's *duty* to inquire into a potential conflict.'" 300 Kan. at 575.

Our Supreme Court has held that if a defendant files a pro se motion for new counsel and later seeks to withdraw it, such withdrawal "must be the personal, voluntary, and knowing act of the defendant, and the record must reflect that circumstance." 300 Kan. at 577. Without such circumstance, "a district court receiving a motion for new counsel that contains an articulated statement of attorney dissatisfaction acquires the *duty*

11

to make reasonable inquiry into the potential conflict of interest and the failure to do so constitutes an *abuse of discretion*." (Emphases added.) 300 Kan. at 577.

*Discussion*

In this case, 10 days before trial, Brown filed a pro se "motion for continuance"—the contents of which claimed ineffective assistance of counsel, alleging that Brown did not fully understand the implications of waiving of his preliminary hearing and that trial counsel "may have created prejudice and bias" in Brown's case. Brown requested a 60-day continuance and a new attorney "that's not prejudice[d] or bias[ed] to the case, and will properly defend the defendant as a right of law." On the same day, Brown filed a pro se motion for competency evaluation which stated Brown "has informed his attorney James Floyd several times that he does not understand anything! Including why he waived his right for preliminary hearing."

These two pro se motions articulated Brown's justifiable dissatisfaction with his attorney through a conflict of interest—by claiming that his trial counsel allowed bias or prejudice to get in the way of Brown's defense—and by demonstrating a breakdown in communication when it came to Brown's right to a preliminary hearing. These allegations triggered the district court's duty to inquire into a potential conflict. 300 Kan. at 575.

But the district court did not conduct *any* inquiry into Brown's claims. Instead, the following interaction took place, in which the district court summarily denied Brown's pro se motions:

  "THE COURT:  . . . All right. And then there [are] two pro se motions. One a motion to continue and one's a motion for a mental—for, I guess, competency evaluation. Mr. Floyd.

12

"MR. FLOYD: Your Honor, in speaking with Mr. Brown, I do believe those motions will be withdrawn. But since he's pro se, I guess I'd actually inquire of Mr. Brown.

"THE COURT: Well—

"MR. FLOYD: To my knowledge, they should be withdrawn.

"THE COURT: —I would state to you that the Court does not entertain pro se motions when parties are represented by counsel.

"So if you're not joining in the motion, then the motion is going to be summarily denied.

"MR. FLOYD: Okay. I have no concerns with his competency. And I believe we'll be ready to go on Monday so I [indiscernible]

"THE COURT: All right. So the motion to continue and the motion for competency evaluation that were filed pro se will be denied at this time."

In the district court's own words, Brown's motions were denied for the sole reason that he was represented by counsel and his counsel did not join in the motion. With this circular reasoning, no criminal defendant could ever bring a successful motion for ineffective assistance of counsel, because that would require the allegedly ineffective counsel to join in the motion claiming their ineffectiveness—which would create a conflict in and of itself.

The State concedes that "Brown is correct that the record needs to establish that Brown personally knowingly and voluntarily withdrew his request for new counsel." The State argues that trial counsel's statement of belief that Brown would withdraw his pro se motions "suggests this to be true." But such a statement by counsel, without any opportunity for Brown to confirm or deny his intent to withdraw the motions, cannot be said to show that Brown *personally* withdrew his request. See 300 Kan. at 577 (withdrawal of pro se motion for new counsel must be the personal, voluntary, and knowing act of the defendant). And without any such showing on the record, the district court abused its discretion in denying Brown's pro se motion raising allegations of dissatisfaction with his counsel's representation. 300 Kan. at 577.

13

Because the district court made no inquiry into Brown's allegations, there is an insufficient record on appeal for this panel to assess the merits of Brown's dissatisfaction with his trial counsel. Accordingly, the court's ruling on Brown's pro se motion is reversed and this matter is remanded with directions for the district court to conduct a hearing on Brown's claim of attorney dissatisfaction—at which Brown should be represented by conflict-free counsel. See 300 Kan. at 578.

THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING BROWN'S MOTION FOR A DEPARTURE SENTENCE

Brown next argues that the district court abused its discretion in denying his motion for a departure sentence because the district court treated Brown as if he had committed crimes against both I.S. and P.F.—even though the jury did not reach a verdict as to the conduct alleged by P.F.

*Standard of Review*

Jessica's Law requires a hard 25 sentence for a defendant who is 18 years of age or older and convicted of a statutorily enumerated crime—including aggravated indecent liberties with a child. K.S.A. 21-6627(a)(1)(C). But if it is the defendant's first time being sentenced under Jessica's Law, the district court may sentence the defendant under a departure from the Kansas Sentencing Guidelines Act if "the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 21-6627(d)(1); see *State v. Powell*, 308 Kan. 895, 902, 425 P.3d 309 (2018).

The district court thus completes a two-step analysis when ruling on a motion for a departure sentence under Jessica's Law. First, the court reviews mitigating circumstances without weighing them against any aggravating circumstances that may exist. *State v. Jolly*, 301 Kan. 313, 322-23, 342 P.3d 935 (2015). Second, the court must determine if

14

there are substantial and compelling reasons for a departure. 301 Kan. at 323. When making this determination, the district court is not required to state its reasons for denying a departure motion or recite each step of the legal framework on the record. *Powell*, 308 Kan. at 909-11.

Appellate courts review "a district court's determination as to whether there are substantial and compelling reasons to depart for abuse of discretion." 308 Kan. at 902. A district court abuses its discretion if the decision was: (1) based on an error of law; (2) based on an error of fact; or (3) arbitrary, fanciful, or unreasonable. 308 Kan. at 902-03. Importantly, the party alleging an abuse of discretion bears the burden of proving it. 308 Kan. at 910.

*Discussion*

Before the sentencing hearing, Brown's trial counsel filed a motion for a durational departure—highlighting Brown's lack of criminal history, his age (57 years old at the time of the crime), and arguing that he was not a threat to society generally because the "offense is specific to I.S. and P.F. Mr. Brown has not been alleged to have engaged in any other sex crimes and has not been violent toward other members of society."

At the sentencing hearing, the State opposed Brown's motion for a departure sentence, arguing that Brown's lack of criminal history was not a compelling reason for departure because although this was his first conviction, the crimes alleged were very serious. The State also countered Brown's argument about being a nonthreatening member of society by pointing out that the victims he took advantage of were children who were entrusted to his care. And lastly, the State argued that Brown's age was not relevant to the severity of the crime he committed. The district court also heard victim impact statements from I.S., her parents, and P.F.'s parents, each requesting that Brown receive the maximum sentence possible.

15

The district court then asked Brown if there was anything he wished to say before the court pronounced his sentence. Brown denied the allegations against him again and expressed that he felt that he did not receive a fair trial because he believed that the jury "convicted [him] as soon as they heard [his] charges." The district court remarked that Brown's perspective was "interesting" seeing as the jury did not convict Brown of one of the two counts. The district court then went on:

> "THE COURT:  All right. Well, Mr. Brown, I was the judge that heard this trial, and I would tell you that I thought the two young ladies that testified were very impressive. They both were very believable, very credible. And so the Court has no problem with the verdict that was rendered by the jury in convicting you.
>
> "I will tell you that this is not just a horrible crime, but it is made worse because you were essentially their caretaker, their baby-sitter. You were the person that these girls relied on to protect them, to keep them safe, and then you violated them.
>
> "I don't know if you realize how much damage that does to people. These young ladies are going to suffer from this long after you're gone. They will spend a lifetime having memories of this and possibly difficulties that are caused by this.
>
> "So what you did to them was indeed a horrible, horrible crime, sir. I know you maintain your innocence, but the evidence was certainly strong the other way, sir.
>
> "So, anyway, for the crime of aggravated indecent liberties with a child, an off-grid felony, the Court is going to impose the statutory sentence of lifetime imprisonment with the possibility of parole after 25 years.
>
> . . . .
>
> "With regard to the Motion for Departure, the Court does not believe that there [are] substantial nor compelling reasons to grant the departure. The Court believes that the lifetime sentence is appropriate and is not going to grant any type of departure."

Brown focuses on the second through fourth paragraphs of the above block quote—contending that these statements suggest the district court ruled upon Brown's departure motion as if Brown had been convicted of crimes committed against *both* I.S. and P.F. However, it does not appear the district court was considering the motion for departure when it was discussing the severity of allegations made by both girls; rather,

16

the district court was responding to Brown's complaints regarding his perception of unfairness in his trial. In fact, the district court had just pointed out to Brown that the jury only convicted him of one charge—not both.

Brown's only argument on this issue is that the district court abused its discretion because the court ruled upon his motion as if Brown were convicted of two crimes. But based on the record, the district court did not appear to suffer from any confusion surrounding Brown's lone conviction. And when the district court did discuss the departure motion, the court merely stated that it did "not believe that there [are] substantial nor compelling reasons to grant the departure." This finding was sufficient, as the district court was not required to state its reasons for denying a departure motion. 308 Kan. at 909-11. Accordingly, Brown has not met his burden of proving the district court abused its discretion in denying his departure motion. See 308 Kan. at 910 (party alleging abuse of discretion bears burden of proof).

### THE DISTRICT COURT ERRED BY INCLUDING RESTITUTION IN THE SENTENCING JOURNAL ENTRY

Brown argues that because the district court did not order any restitution from the bench at sentencing, the restitution order must be vacated and remanded to the district court with instructions to issue a nunc pro tunc order removing the $520 in restitution from the journal entry of judgment. The State concedes this issue, agreeing that a nunc pro tunc order to remove the restitution is proper.

"A sentencing court loses jurisdiction to modify a sentence except to correct arithmetic or clerical errors after a legal sentence has been pronounced from the bench." *State v. Johnson*, 309 Kan. 992, 996, 441 P.3d 1036 (2019). And restitution is part of a sentence. 309 Kan. at 996. A district court must make "'an explicit and specific order of

continuance for the purpose of determining the amount of restitution'" or else lose jurisdiction to impose restitution after a sentencing hearing has ended. 309 Kan. at 996.

Here, the State requested $520 in restitution at the sentencing hearing, but Brown's counsel objected, arguing that the State had not provided any receipts or verification to support the amount requested. The district court acknowledged Brown's objection and then moved on to victim statements. The district court ultimately ordered court costs of $193, a DNA fee of $200, and a witness fee of $350—but did not order Brown to pay any restitution at the sentencing hearing. Yet the journal entry of judgment later included a restitution order of $520.

The district court never made any explicit and specific order of continuance to determine restitution. Thus, the district court lost subject-matter jurisdiction to order restitution in the journal entry of judgment after the hearing had concluded. See 309 Kan. at 996. Accordingly, the district court's order of restitution is vacated, and this matter is remanded with instructions to enter a nunc pro tunc order removing the $520 in restitution from the journal entry of judgment.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.