(114 P.3d 989)

No. 92,409

STATE OF KANSAS, *Appellee*, v. LORI LYNN STOUT, *Appellant*.

Opinion filed July 8, 2005.

*Richard Ney*, of Ney, Adams & Sylvester, of Wichita, for appellant.

*William R. Mott*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., GREENE, J., and KNUDSON, S.J.

GREENE, J.: Lori Lynn Stout appeals from her conviction and sentence for one count of unlawful sexual relations, contrary to K.S.A. 2004 Supp. 21-3520(a)(8). Her appeal frames for our consideration several issues of first impression in applying this statute to conduct between a teacher and a student, where the ultimate sexual touching was "French kissing." We conclude that French kissing under the circumstances of this case can be legally sufficient to constitute lewd touching and that sufficient evidence supported Stout's conviction, but we reverse her conviction and remand for a new trial due to jury instruction error.

*Factual and Procedural Background*

In early 2003, victim E.Z. was 16 years old and a student at Wellington High School. Stout was her chemistry teacher in the fall of 2002 and her softball coach. E.Z. began staying overnight at Stout's house 2 or 3 years prior, and they would usually watch movies. During the intervening period, E.Z. "developed feelings" for Stout, but according to E.Z., this was not the result of any misconduct by Stout.

During an overnight visit by E.Z. to Stout's residence while watching movies, E.Z. leaned over and kissed Stout. Stout responded by pulling away and stating that she did not think this was

a good idea. Nevertheless, E.Z. and Stout finished the movie and then began discussions wherein E.Z. professed her feelings for Stout. After talking throughout the night in bed together, they engaged in further emotional discussions. At some point during these discussions, E.Z. initiated another kiss, this time described as a "French kiss" or an open mouth kiss where her tongue touched Stout's tongue for a couple of minutes. After the kiss, the two professed their love for each other. Although E.Z. agreed that the kiss was "romantic" and admitted that the kiss aroused "feelings of intimacy," she denied any "feeling of wanting to have sex or anything like that." On cross-examination by defense counsel, E.Z. stated that she was never sexually aroused but rather emotionally aroused and "wanted to be close" to Stout.

Although this first French kiss was the only sexual act charged, E.Z. testified that following this episode, she spent the night with Stout on several occasions, slept in the same bed, and often engaged in French kissing. She denied any other type of sexual touching or activity, and Stout told authorities that they were not interested in taking their relationship to that level, in part due to Stout's strong belief that premarital sex was against her religion. These encounters continued until E.Z.'s parents became involved in September 2003. Upon discovery, Stout voluntarily resigned her teaching position because she "didn't want to cause Wellington High School problems."

In December 2003, Stout was charged with one count of unlawful sexual relations, contrary to K.S.A. 2004 Supp. 21-3520(a)(8). After a preliminary hearing, Stout was bound over for arraignment. Stout stood mute to the charge and filed a motion to suppress statements and a motion to dismiss the charge; both motions were denied by the district court after argument. The matter proceeded to trial by a jury, but prior to deliberations, the defense objected to proposed jury instruction No. 5, which provided a dictionary definition of the word "morals." The court overruled the objection, gave the instruction, and the jury found Stout guilty as charged. She was sentenced to probation for 12 months with an underlying prison term of 7 months—the maximum sentence under the sentencing guidelines. The court overruled a defense objection to

Stout's registration as a sex offender. See K.S.A. 2004 Supp. 22-4901 *et seq*. Stout appeals.

*Did the District Court Err in Denying Stout's Motion to Dismiss?*

Stout first argues that the district court erred in denying her motion to dismiss because a French kiss cannot constitute lewd touching as a matter of law. This argument requires that we interpret K.S.A. 2004 Supp. 21-3520(a)(8) and, in doing so, our review is unlimited. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

The unlawful sexual relations statute, K.S.A. 2004 Supp. 21-3520, provides in relevant part:

"(a) Unlawful sexual relations is engaging in consensual sexual intercourse, lewd fondling or touching, or sodomy with a person who is not married to the offender if:

. . . .

(8) the offender is a teacher or a person in a position of authority and the person with whom the offender is engaging in consensual sexual intercourse, lewd fondling or touching or sodomy is 16 or 17 years of age and a student enrolled at the school where the offender is employed."

Our Supreme Court in *State v. Wells*, 223 Kan. 94, Syl. ¶ 2, 573 P.2d 580 (1977), construed the term "lewd fondling or touching" to mean:

"fondling or touching in a manner which tends to undermine the morals of the child [victim], which is so clearly offensive as to outrage the moral senses of a reasonable person, and which is done with the specific intent to arouse or to satisfy the sexual desires of either the [victim] or the offender or both." (The *Wells* criteria.)

Stout relies principally on two cases to support her argument. We find neither persuasive. First, she cites *State v. Ramos*, 240 Kan. 485, 487, 731 P.2d 837 (1987), where our Supreme Court sustained a conviction for lewd touching but, according to Stout, "required much more than a kiss to do so." We certainly agree that the touching in *Ramos* included not only kissing, but pulling the child into bed, hugging her, and fondling her buttocks and pubic area. We find no guidance in the *Ramos* opinion, however, on how

to make this legal determination for circumstances like those presented here.

Second, Stout cites *State v. Louviere*, 602 So. 2d 1042 (La. App. 1992), where attempted but unsuccessful French kissing was deemed insufficient under the facts of that case to establish attempted indecent (lewd) behavior with a juvenile under Louisiana law. Not only does *Louviere* address quite different facts (daylight, plain view, while defendant scraping garbage from a plate) and construe a very different statute (La. Rev. Stat. Ann. § 14:81 [West 1992]), it is directly contrary to *Wells* in requiring "genital contact or any other obscene or indecent act or repeated occurrence" to meet the statutory threshold in Louisiana for indecent or lewd behavior. Compare *Louviere*, 602 So. 2d at 1044-45, with *Wells*, 223 Kan. at 97 (touching of sex organs not required for lewd touching). Moreover, we do not read *Louviere* as supporting the proposition that a French kiss is legally deficient to establish indecent or lewd behavior, but rather that the evidence was insufficient in that particular case. 602 So. 2d at 1044-45 ("[I]t would be *difficult* for the rational trier of fact to conclude that the testimony concerning a 'bad kiss' proved the occurrence of a lewd and lascivious act." [Emphasis added.]).

Far more persuasive are authorities from other jurisdictions which have recognized that a French kiss is an inherently sexual act generally resulting in sexual excitement and arousal. See, *e.g.*, *Altman v. State*, 852 So. 2d 870, 875-76 (Fla. Dist. App. 2003) (verdict reflected a common understanding that such intimate oral contact with a child is sexual in nature); *People v. Kirilenko*, 1 Ill. 2d 90, 96, 115 N.E.2d 297 (1953) (kissing can constitute sexual conduct under appropriate circumstances); *People v. Calusinski*, 314 Ill. App. 3d 955, 961-62, 733 N.E.2d 420, 426 (2000) (reasonable inference that defendant's placement of his tongue in victim's mouth was for purposes of his own sexual arousal); *People v. Ford*, 83 Ill. App. 3d 57, 74, 403 N.E.2d 512 (1980) (placing tongue in victim's mouth could constitute a lewd sexual act); *State v. Toster*, 2004 WL 2339380 (N.C. App. 2004) (unpublished opinion) (tongue kissing is simply not an activity which lends itself to nonsexual interpretation). In contrast to these authorities, we find none

which conclude that French kissing cannot be lewd touching *as a matter of law.*

A French kiss or tongue kiss is indisputably a touching; moreover, it is a touching that is not *necessarily* innocent, dependent upon the circumstances. Given the weight of authorities acknowledging that such kissing can be intimate sexual contact, we decline to hold as a matter of law that such contact cannot be lewd touching for purposes of K.S.A. 2004 Supp. 21-3520. Whether such contact was lewd given the totality of the circumstances was a question for the jury. See *State v. Gilley*, 5 Kan. App. 2d 321, 324, 615 P.2d 827, *rev. denied* 228 Kan. 807 (1980). The district court committed no error in denying Stout's motion to dismiss.

*Was Stout's Conviction Supported by Sufficient Evidence?*

Stout next challenges the sufficiency of the evidence to support her conviction. Our standard of review is whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational jury could have found the defendant guilty beyond a reasonable doubt. See *State v. Mays*, 277 Kan. 359, 377, 85 P.3d 1208 (2004).

In support of her argument, Stout emphasizes that E.Z. was the instigator of the conduct, that there were never any sex acts, that there was a denial of sexual arousal, that Stout denied any intent to take the relationship to the next level, that E.Z's morals were not undermined because she admitted prior incidents involving French kissing, and that there was no conduct that would outrage the moral senses of a reasonable person. We find these arguments cogent and substantial, but they do not merit reversal given our standard of review.

First, it matters not for purposes of K.S.A. 2004 Supp. 21-3520 that E.Z. was the instigator; merely "engaging" in consensual conduct meets the extent of the statutory requirements, and the *Wells* criteria proscribes an intent to gratify the victim or the offender or both. See *Wells*, 223 Kan. 94, Syl. ¶ 2. Second, the absence of "traditional" sexual activity such as intercourse or sodomy is simply not required by the statute; lewd fondling or touching alone is specifically proscribed. Third, the denial that any sexual arousal

was *achieved* does not exclude a finding that sexual arousal was *intended*; as noted by our court in *Gilley*, proof of *actual* arousal is not required—intent may be shown by circumstantial evidence. 5 Kan. App. 2d at 324. Fourth, we view Stout's denial of any intent to take the relationship to the next level as being mutually exclusive to her intent in the acts of French kissing; she may have not intended to move on or progress to more traditional sexual acts, but that alone does not clothe her intent in the acts of French kissing with innocence. Fifth, E.Z.'s prior kissing experience might be relevant to the state of her morals, but it does not negate the possibility that the jury could find that the encounter with Stout served to further undermine that moral condition. Finally, whether the offending activity under the totality of the circumstances served to outrage the moral senses of a reasonable person is best left to the jury; our reasoning here parallels our discussion concluding that the involved activity cannot be legally deficient as a matter of law, but we note that even Stout's initial response to E.Z. indicated an awareness that such conduct was wrong at some level.

The undisputed facts, when viewed in the light most favorable to the State, support the occurrence of a lengthy, "good," "deep," "passionate," "intimate," "romantic," and "memorable" French kiss in the bed of the defendant after an overnight stay, and the kiss achieved emotional arousal and was followed by professions of true love and repeated encounters involving the same conduct. Intent may be shown by acts, circumstances, and reasonable inferences. *State v. Salcido-Corral*, 262 Kan. 392, 398, 940 P.2d 11 (1997). Ordinarily, a person intends all of the usual consequences of his or her voluntary acts. See *State v. Acheson*, 3 Kan. App. 2d 705, 712-14, 601 P.2d 375, *rev. denied* 227 Kan. 927 (1979). When the facts of a case can be interpreted to support either the State's or the defendant's theory, our standard of review compels us to conclude that the evidence was sufficient. See *State v. Graham*, 277 Kan. 121, 134, 83 P.3d 143 (2004). We are convinced that a rational jury could have found Stout guilty beyond a reasonable doubt.

*Did the District Court Err in Instructing the Jury on the Definition of "Morals" Over the Defendant's Objection?*

Stout next argues that the district court erred in instructing the jury on the definition of the term "morals" over her objection. The record shows that Instruction No. 5 stated: "Morals defined: principles, standards, or habits with respect to right or wrong conduct." During the jury instructions conference, the following defense objection to Instruction No. 5 was overruled by the court:

"Your Honor, as we discussed in chambers, I would object to this instruction. Again, it's— PIK does not tell us to define morals. I don't know—Of course, it doesn't mean we cannot. My concern is this is more a definition of morals based on sort of conduct in the community, in life as opposed to what I think that the Instruction No. 4 deals with which is sexual morals. And I think that when instructing Instruction No. 4, it's correct when it talks about morals and the implications to undermine the morals of the child regards to sexual morality as opposed to philosophical morality or—or the like. And that's why we would object."

When reviewing challenges to a jury instruction, this court must consider the instructions as a whole and not isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. See *Mays*, 277 Kan. at 378-79.

On appeal, Stout explains her argument as follows:

"The prejudice to the Defendant here was that the jurors, based on the court's instruction, could have found the Defendant guilty if they decided that the kiss was merely something which breached social norms of 'right or wrong conduct.' In other words, if the jury decided that E.Z.'s romantic conduct with the Defendant somehow compromised E.Z.'s 'principles [or] standards,' it could convict the Defendant, even if they believed the act did not sexually corrupt E.Z. That danger is especially great here where the act was a kiss, which the jury would not necessarily find sexual, but might very well find socially 'wrong,' especially between two individuals of the same sex or a teacher and a student."

We agree with Stout. First, the broad dictionary definition of the term "morals" was not required by the Kansas pattern instructions and may have invaded the province of the jury; morality is often in the eyes of the beholder, and a jury is presumably possessed of normal human attributes that would enable it to ascertain

the common meanings of the terms "morals" and "moral senses" for determining what conduct constitutes lewd touching under K.S.A. 2004 Supp. 21-3520, as utilized in Instruction No. 4 (the *Wells* criteria).

Second, the broad, general morals definition instruction failed to distinguish between recognized types of morality. Application of K.S.A. 2004 Supp. 21-3520 and the *Wells* criteria for lewd touching requires at least a distinction between the private morality of the victim for purposes of determining whether the touching undermines the morals *of the victim*, and the public or community morals for purposes of determining whether the touching outrages the moral senses *of reasonable persons*. See *Wells*, 223 Kan. 94, Syl. ¶ 2. Black's Law Dictionary recognizes alternative definitions for the term "morality" as a system of duties or ethics, either private or public, where private morality consists of a person's ideals, character, and private conduct which are not valid governmental concerns if the individual is to be considered sovereign over body and mind, whereas public morality consists of the ideals or general moral beliefs of a society. Black's Law Dictionary 1030 (8th ed. 2004). The *Wells* criteria first employs the term "morals" as being private to the victim in its reference to such conduct undermining the "morals of the child." The *Wells* criteria then employs the term "moral senses" as being public in its reference to measuring the public outrage at such conduct. Without specificity or precise direction for the jury, a broad definition of morals was almost certain to mislead the jurors in applying the *Wells* criteria to the facts before them.

Third, and perhaps most important, the broad definition of morals undoubtedly misled the jury in interpreting and applying Instruction No. 4 (the *Wells* criteria for lewd touching) in the context of the case at large. The *Wells* criteria employs the terms "morals" and "moral senses" *solely* in defining the type of lewd fondling or touching that are proscribed by the statute. Clearly, in determining the guilt or innocence of a defendant charged with lewd touching, it would be inappropriate to enter a finding of guilt merely because, as Instruction No. 5 would suggest, the conduct as a whole is viewed as wrong. K.S.A. 2004 Supp 21-3520(a)(8) inherently re-

quires that the conduct involve a teacher and a student; the court's broad definition of morals without further direction served to permit—if not foster—a finding of guilt for this reason alone, without the necessity of determining whether the touching *itself* (not the relationship) undermined the morals of the victim or outraged the moral senses of reasonable persons.

Considering the instructions as a whole, particularly because Instruction No. 5 likely misled the jury in applying Instruction No. 4, we conclude that the instructions did not properly and fairly state the law, and we have no alternative other than to reverse Stout's conviction and remand for a new trial. On remand, the district court is directed either to avoid defining morals and moral senses or to fashion an instruction that more carefully respects the context of these terms within the *Wells* criterial and assures that the jury will not misapply any definitions given.

Stout also challenged her sentence and the constitutionality of the Kansas Sexual Offender Registration Act, K.S.A. 2004 Supp. 22-4901 *et seq.*, as applied, but these issues will not be addressed given our reversal of her conviction.

Reversed and remanded with directions.