No. 104,241

STATE OF KANSAS, *Appellee,* v. DINH LOC TA, *Appellant.*

(290 P.3d 652)

Opinion filed December 28, 2012.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This appeal raises the issue of whether the State presented sufficient evidence of a lewd fondling or touching by proving that Dinh Loc Ta touched the faces, hair, arms, and legs of two young girls, touches the trial judge referred to as "relatively innocuous." Because the touches did not tend to undermine the children's morals and were not so clearly offensive as to outrage the moral senses of a reasonable person, we conclude the evidence against Ta was insufficient, and we reverse his convictions on two counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A).

## FACTS AND PROCEDURAL BACKGROUND

The charges arose on July 19, 2009, when Ta approached and touched two young girls who were playing outside a Wichita movie theater. The girls, who were 2 and 3 years old respectively, were with their mothers. Just before Ta approached the group, one of the mothers placed her daughter, who was the older child, on a bench and then sat on an adjoining bench with the other mother and younger child.

According to Ta's testimony, he approached the group, introduced himself, and then began talking to the older child. He testified that he told the child she was cute and asked her name. When the child did not respond, Ta held out his hand to her and she

tentatively stuck out her hand. He then released her hand and touched her leg because there "was some kind of dirt in the grass so I brush[ed] it off." Ta further testified that when the child did not say anything, he touched her face and her hair.

The older child's mother testified that Ta approached the group and introduced himself to the adults. He then approached her daughter and asked the child her name. When the child did not answer, Ta pulled the child's hair away from the front of her face and tucked it behind her ear. He then began to rub his fingertips up and down the child's arm in what the mother agreed could be described as a very brief, "comforting pat." She did not see Ta touch her daughter's leg.

The younger child's mother testified that Ta approached the older child and moved her hair back while "kind of caressing her face." He then rubbed up and down on the older child's upper leg. She did not see Ta touch the older child on the arm before she picked up the child and began to walk toward the theater.

Ta then approached the younger child. Ta testified that he noticed the girl was not enjoying the day and because she was sitting with her head down, he rubbed her knee and said "hi" to her and told her his name "just to get her to look up, but she didn't look up . . . . [T]hen I . . . touch[ed] her face and her hair and her chin, and I ask[ed] her what's wrong and I didn't get any response from her." When he decided the younger child did not want to talk, he walked away, according to his testimony before the jury.

The older child's mother, who was sitting next to the younger child, told the jury, "He grabbed [the younger child's] arm and was feeling on it." He then walked away. She picked up the younger child and walked toward the theater.

The younger child's mother, who had picked up the older child before Ta approached the younger child, testified she heard Ta ask her daughter her name and age. The younger child did not respond. The mother did not see Ta touch her daughter.

The mother of the older child, who worked at the theater, approached her boss and told him what had happened. She testified, "[H]e said that if [Ta came] up to them again he'd call the cops, and then we took matters in our hands and we called the cops

ourselves." When the law enforcement officer arrived, the mothers reported that a man had touched their daughters' legs and faces and "they believed he was trying to molest the kids." The officer decided to do a brief interview of Ta "because at that point I didn't know if we had a violation of anything."

The officer first asked Ta some general questions. Ta then "kind of went into advising that he had a problem, that he wanted to go speak with a doctor and then stated that he felt that he was a danger." When the officer asked Ta to explain what he meant, Ta "advised that he wanted to have sex with children. Then he stated that he was having a difficult time controlling his urges and they were becoming stronger, and then he repeated that he wanted to have sex with kids and that he feels that he's a danger." During follow-up questioning, the officer asked Ta whether "touching their legs . . . satisf[ied] your sexual desires or did you feel the need for more?" Ta replied that "he wanted to have sex with them." The officer explained that all the statements Ta made about having sex with children were hypothetical, Ta did not admit that it was something that he did or had done. In fact, "[h]e said he never had sex with children."

The officer took Ta into custody. Subsequently, Ta made several statements in which he reiterated that he had strong urges to have sex with small children. A video of some of these statements, including some sexually explicit and vulgar statements he made while by himself in a conference room, were played to the jury.

At trial, Ta did not dispute that there was substantial evidence to establish his intent but insisted there was no evidence that he had committed a lewd touching. Based on this argument, Ta moved for judgment of acquittal at the close of the State's evidence and again after the verdict. The trial judge denied both motions and let stand the jury convictions of two counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A).

The judge also denied Ta's motion for a departure sentence and imposed concurrent terms of life imprisonment with a mandatory minimum sentence of 25 years. Ta timely appeals his convictions. This court has jurisdiction under K.S.A. 22-3601(b) (maximum sen-

tence of life imprisonment imposed; appeal docketed prior to July 1, 2011).

## ANALYSIS

On appeal, Ta raises two arguments regarding the trial judge's denial of his motions for judgment of acquittal. First, Ta contends the judge applied the wrong standard when it ruled on the motions. Second, Ta contends there is insufficient evidence of a violation of K.S.A. 21-3504(a)(3)(A), which provides that aggravated indecent liberties with a child is engaging in "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." As at trial, Ta does not dispute that there is overwhelming evidence of his intent, but he continues to argue the State failed to present evidence of a lewd fondling or touching.

### K.S.A. 22-3419(1) Standard and Standard of Review

In Ta's first argument, he challenges the trial judge's application of K.S.A. 22-3419(1), the statute that governs a Kansas court's consideration of a motion for judgment of acquittal. K.S.A. 22-3419(1) provides in relevant part:

"The court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more crimes charged in the complaint, indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such crime or crimes."

Ta claims the trial judge erred in his application of this statute when the judge stated:

"I can't make a finding that this jury acted unreasonably. . . . I don't believe that substituting my judgment for that of the jury is appropriate in this case. I can't say that no reasonable juror should have found what the jury found. I can't go that far and I won't go that far."

Specifically, Ta argues that rather than determine the reasonableness of the jury verdict, the trial judge was obligated to examine whether there was evidence to establish each element of the crime beyond a reasonable doubt. Ta argues it was predictable that a reasonable jury would find him guilty because the theme of the

State's case was that his illicit thoughts proved his guilt of the crimes. As an example of how this theme played out during the trial, Ta points to the following comments during the rebuttal portion of the State's closing argument:

"Counsel wants you to think that anybody who goes up to a child in a park and touches them on the face is going to be charged with aggravated indecent liberties. The officers told you when they talked to the moms they looked at it and thought, well, I don't know what we've got here, we've got a guy touching kids. *His confession, his words are what makes it a crime*, ladies and gentlemen. It's not just touching a child. It's touching a child in a lewd manner with the intent to arouse or satisfy the sexual desires. *He told them what his intent was and what his sexual desires were, and that is what makes it a crime to go up and touch a child on the legs, on the arms, on the face and the hair. Normal [people], everyday [people don't] have to worry about that. They don't have that [kind of] sexual desire.* This defendant does." (Emphasis added.)

Ta argues this was a misstatement of law, yet it also illustrates the prosecutor's theory and theme throughout the trial—a normal everyday touching was lewd because of Ta's thoughts.

The State's melding of the elements also led the trial judge to commit error, according to Ta. He argues the judge, in denying the motions for judgment of acquittal, single mindedly focused on Ta's intent and not his actions, stating:

"[I]f this case had been tried to the Court, bench trial, I'm not sure I would have convicted the defendant on the basis of the facts presented. I think the acts in and of themselves are relatively innocuous, but you have to look at the defendant's actions in their entire context, and the defendant's intent is critical here and I think that's what the jury particularly focused on. The acts taken on face value, I would say that the defense would be correct in their judgment, but the jury didn't have just the acts of the defendant. They had his numerous statements that he made after the fact discussing his desire to have sex with children, and I think we all know that those—it was the statements . . . of the defendant that I think are the critical turning point in this case."

According to Ta, these statements illustrate that the trial judge—like the State and the jury—focused on the overwhelming evidence of intent and failed to examine the separate element of whether the touching was a lewd fondling or touching defined by the statute.

As Ta notes, "the Due Process Clause of the Fourteenth Amendment requires proof beyond a reasonable doubt of *each element* of the crime charged. [Citation omitted.]" (Emphasis added.) *State v. Douglas*, 230 Kan. 744, 745, 640 P.2d 1259 (1982). "[B]oth a culpable *mens rea* and a criminal *actus reus* are generally required for an offense to occur." *United States v. Apfelbaum*, 445 U.S. 115, 131, 100 S. Ct. 948, 63 L. Ed. 2d 250 (1980); see K.S.A. 21-3105 ("A crime is an act or omission defined by law . . . .").

Further, due process requires the factfinder to " 'rationally apply [the proof-beyond-a-reasonable-doubt] standard to the facts in evidence.' " *Douglas*, 230 Kan. at 745 (quoting *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 61 L. Ed. 2d 560, *reh. denied* 444 U.S. 890 [1979]). Hence, when a defendant challenges the sufficiency of the evidence through a motion for judgment of acquittal, a court must examine the evidence in the light most favorable to the prosecution and determine if a juror could rationally apply the evidence and find proof beyond a reasonable doubt of each element of the charged crime. See *Jackson*, 443 U.S. at 318-19 (relevant inquiry is whether a factfinder could find the essential elements of a crime beyond a reasonable doubt); *State v. Wiggett*, 273 Kan. 438, 443, 44 P.3d 381 (2001); *Douglas*, 230 Kan. at 745-46.

If there is not sufficient evidence of each element of a charged crime, under K.S.A. 22-3419(1) a court "*shall* order the entry of judgment of acquittal . . . ." (Emphasis added.) Thus, a trial court's "decision to grant a motion for judgment of acquittal is not discretionary." *State v. Murdock*, 286 Kan. 661, 668, 187 P.3d 1267 (2008).

An appellate court applies the same standard:

"In reviewing the denial of a motion for judgment of acquittal, the appellate court examines the sufficiency of the evidence in support of the conviction. [Citations omitted.] The applicable standard of review is well known: When examining the sufficiency of the evidence in a criminal case, the standard of review is whether, after reviewing all the evidence in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citations omitted.]" *State v. Raskie*, 293 Kan. 906, 919-20, 269 P.3d 1268 (2012).

In evaluating the evidence, the courts do not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. *Raskie*, 293 Kan. at 920; *State v. Ward*, 292 Kan. 541, 581, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Hence, the trial judge in this case was correct in concluding his role was not to substitute his judgment for the jurors. Rather, the judge should have reviewed all evidence in the light most favorable to the prosecution. Yet, the judge had an independent duty to determine if the evidence, when viewed in that light, was sufficient to establish that Ta had committed the required *actus reus*, which is lewd fondling or touching of a child younger than 14 years of age, while possessing the required *mens rea*, which is the intent to arouse or satisfy sexual desires. See *State v. Brown*, 295 Kan. 181, 200-02, 284 P.3d 977, 992 (2012) (*actus reus* and *mens rea* must coexist for crime to occur); see K.S.A. 21-3504(a)(3)(A) (defining elements of aggravated indecent liberties with a child). If the evidence was insufficient as to either element, the trial judge was required to grant the motion for judgment of acquittal.

This brings us to an analysis of the definition of a "lewd fondling or touching," an assessment of whether there was sufficient evidence of a lewd act in this case, and whether, as Ta argues, the trial judge improperly relied on evidence of Ta's mental state to determine there was sufficient evidence of lewd fondling or touching.

*The Evidence of a Lewd Act was Insufficient*

The State, in responding to Ta's argument that the trial judge incorrectly considered his mental state in assessing whether his acts were lewd, argues the trial judge correctly considered the totality of the circumstances, which necessarily included Ta's state of mind. For support, the State cites *State v. Rutherford*, 39 Kan. App. 2d 767, 184 P.3d 959, *rev. denied* 286 Kan. 1184 (2008), and *State v. Stout*, 34 Kan. App. 2d 83, 114 P.3d 989, *rev. denied* 280 Kan. 991 (2005), and the Pattern Instructions for Kansas (PIK) defining the term "lewd fondling or touching," PIK Crim. 3d 53.00. In both of these cited cases, the Court of Appeals emphasized that the totality of the circumstances had to be considered to determine whether

a kiss was a lewd act rather than a socially and legally acceptable greeting or display of affection. See *Rutherford*, 39 Kan. App. 2d at 776; *Stout*, 34 Kan. App. 2d at 89.

In *Rutherford*, the Court of Appeals was presented with facts of an adult kissing a 4-year-old girl in a way that was described as being " 'like you would kiss a girlfriend' " and continued to do so after the child objected; in addition, the defendant admitted the kiss was inappropriate, and he told other adults that the child "had pretty lips and would be a good kisser because guys liked full lips." *Rutherford*, 39 Kan. App. 2d at 776. The totality of these circumstances provided sufficient evidence of a lewd touching, according to the Court of Appeals. *Rutherford*, 39 Kan. App. 2d at 776-77.

The Court of Appeals reached the same holding in *Stout* where the alleged lewd touching included what was described as a " 'good,' 'deep,' 'passionate,' 'intimate,' 'romantic,' and 'memorable' french kiss in the bed of the defendant after an overnight stay, and the kiss achieved emotional arousal and was followed by professions of true love and repeated encounters involving the same conduct." *Stout*, 34 Kan. App. 2d at 89.

Drawing a comparison to *Rutherford* and *Stout*, the State argues a "normal" touch of a child's hair, face, arm, or leg can be lewd when the totality of the circumstances is considered. In this case, the State argues the surrounding circumstances included the fact Ta was a complete stranger to the two girls who were of tender age. Ta approached the older child when she was sitting on a bench by herself and caressed her face, played with her hair, rubbed the upper portion of her leg, and ran his fingertips up and down her arm. When the older child was physically removed from the situation, Ta was "undaunted," approached the younger girl, and began touching her as well. This conduct led the girls' mothers to feel that Ta was trying to molest their daughters. Further, the State argues that Ta's statements to the police were clearly within the totality of the circumstances of the event itself, and these statements indicate that Ta's actions "were akin to romantic foreplay."

Although neither the *Rutherford* nor *Stout* courts explicitly considered the defendant's intent, the State argues intent would have been an appropriate consideration because it is incorporated into

the definition of "lewd fondling or touching" found in PIK. As stated in PIK Crim. 3d 53.00, that instruction provides:

"[Lewd fondling or touching means] fondling or touching in a manner which tends to undermine the morals of the victim, which is so clearly offensive as to outrage the moral senses of a reasonable person, and which is done with the specific intent to arouse or satisfy the sexual desires of either the victim or the offender or both. Lewd fondling or touching does not require contact with the sex organ of one or the other. [Citation omitted.]"

This definition is taken from this court's decision in *State v. Wells*, 223 Kan. 94, 97-98, 573 P.2d 580 (1977). *Wells* was decided after the aggravated indecent liberties with a child statute was amended by the Kansas Legislature in response to this court's decision in *State v. Conley*, 216 Kan. 66, 71, 531 P.2d 36 (1975). To explain the *Wells* decision, we begin our discussion with the decision in *Conley*.

Conley challenged the constitutionality of the prior version of the indecent liberties with a child statute because it vaguely prohibited *"any* fondling or touching." (Emphasis added.) K.S.A. 21-3503(1)(b) (Weeks). This court agreed with Conley's arguments, concluding the statute did not sufficiently describe the type of contact that was prohibited. The court noted that "[i]t seems doubtful the legislature meant to proscribe every form of touching of the person even though some degree of sexuality be present as in youthful kissing or embracing, yet that can be argued from the language employed." *Conley*, 216 Kan. at 70.

The Kansas Legislature responded by adding the word "lewd" to the phrase "fondling or touching." L. 1975, ch. 193, sec. 2. The impact of that change was then considered in *Wells*, 223 Kan. at 97-98.

First, the *Wells* court noted that the Kansas Legislature did not choose to restrict the prohibited conduct by identifying body parts that could not be touched, even though that was a possible remedy mentioned in *Conley*. Instead, the Kansas Legislature restricted the type of touching that was prohibited by adding the word "lewd," which is a word with "an unmistakable meaning which is very well and generally understood." *Wells*, 223 Kan. at 98.

Next, the *Wells* court noted that the common definition of "lewd" is "sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; indecent, obscene, salacious." *Wells*, 223 Kan. at 98 (citing Webster's Third New International Dictionary 1301). In light of this definition, the *Wells* court concluded that the statute was "obviously . . . aimed toward the protection of the moral integrity of the child." *Wells*, 223 Kan. at 98. Ta's arguments focus on this portion of the *Wells* decision.

Then, in summary, the *Wells* court stated:

> "In our judgment the words in the statute, 'lewd fondling or touching' of the person of either the child or the offender, should be construed to require the [S]tate to prove a fondling or touching in a manner which tends to undermine the morals of the child, which is so clearly offensive as to outrage the moral senses of a reasonable person, *and which is done with the specific intent to arouse or to satisfy the sexual desires of either the child or the offender or both.*" (Emphasis added.) *Wells*, 223 Kan. at 98.

The contrasting arguments presented by Ta and the State reveal the conflicting instruction created by the *Wells* court's summary. The first portion of the summary, the portion on which Ta relies, restates the common meaning of the word "lewd" and provides, at least in part, an objective standard—a reasonable person standard—by requiring the touch be one that is clearly offensive so as to outrage the moral senses of a reasonable person. The second portion of the summary, the portion on which the State relies, brings the defendant's subjective intent into consideration.

On close reading of the *Wells* decision, we conclude the *Wells* court mislabeled its summary as a definition of *one* element of the crime of indecent liberties with a child—the element of a "lewd fondling or touching"—when the court was actually restating *both* elements of the crime in commonly understood terms. This mislabeling is made apparent by a reading of the *Wells* court's prior discussion of the definition of "lewd" because in that more expanded discussion the court defined the criminal act element by looking at the definition of lewd and determining the element was aimed at an act that tends to undermine the morals of the child and which is so clearly offensive as to outrage the moral senses of

a reasonable person. Intent was not a part of the discussion. Subsequent decisions of this court verify that the focus must be on the nature of the act.

For example, in *State v. Colston*, 290 Kan. 952, 967, 235 P.3d 1234 (2010), this court found that the act of putting a child between a defendant's legs and then onto his lap while they were at a swimming pool was not a lewd touching because it was not " 'so clearly offensive as to outrage the moral senses of a reasonable person.' " *Colston*, 290 Kan. at 967 (quoting jury instruction). The holding did not depend on the defendant's criminal intent or lack thereof.

Additionally, in cases where this court determined a touching was lewd, the focus was placed on whether there was evidence of an act that undermined the morals of a child and was clearly offensive to the morals of a reasonable person. See, *e.g.*, *State v. Ramos*, 240 Kan. 485, 486-87, 731 P.2d 837 (1987) (defendant challenged sufficiency of the evidence regarding whether fondling or touching was lewd; this court determined the evidence that defendant kissed the child on the mouth, pulled the child onto a bed and got on top of her, and later in the kitchen fondled the child's buttocks and pubic area through her clothes was sufficient evidence to show the touching was lewd), *superseded by statute on other grounds as stated in State v. Hutchcraft*, 242 Kan. 55, 59-61, 744 P.2d 849 (1987). Again, the defendant's intent was not a factor in the determination.

We have also cautioned against collapsing the separate elements of a lewd touching and an intent to arouse into one element. One such caution can be found in *State v. Naputi*, 293 Kan. 55, 59-60, 260 P.3d 86 (2011). In that case, the evidence established the defendant touched the sexual organs of some children and touched the thighs and pubic bones of others. In closing argument, the prosecutor told the jury, " 'Sexual intent, determine it from the place of the touching, and maybe the law on lewd fondling. The interpretation of intent doesn't come from him (pointing). It comes from a reasonable person.' " *Naputi*, 293 Kan. at 60. We concluded this comment was a misstatement of the law because it focused solely on the prohibited act and invited the jury to ignore the intent element. The court stated:

"The remark suggests that the jury's inquiry is reduced to the single determination of whether a reasonable person would find that Naputi's touching of the boys fit the definition of lewd fondling. Following the prosecutor's logic, all the State was required to prove was the fact of the lewd contact, allowing the jury to assume the presence of the specific intent element from the act of touching. Moreover, the prosecutor specifically tells the jury not to consider Naputi's subjective intent for touching the boys. Accordingly, we must conclude that the prosecutor's comment was a misstatement of law that effectively combined the lewd touching or fondling element with the requisite specific sexual intent element, both of which are required for a conviction of aggravated indecent liberties with a child." *Naputi*, 293 Kan. at 60-61.

Here, the trial judge's findings similarly collapsed the two elements into one, and the State perpetuates this error on appeal by arguing the strong evidence of intent is proof Ta's acts were lewd. This interpretation of the law reverts to the crime found to be unconstitutionally vague in *Conley*; it makes *any* fondling or touching a violation of the statute as long as the act is performed with a lewd intent. To avoid this constitutional infirmity, there must be evidence that the act was lewd, and this element should not be dependent upon the subjective intent of a defendant.

To hold otherwise would allow punishment for impure, criminal thoughts, and it is a fundamental principle that "the law does not punish criminal thoughts." *United States v. Shabani*, 513 U.S. 10, 16, 115 S. Ct. 382, 130 L. Ed. 2d 225 (1994); see *Apfelbaum*, 445 U.S. at 131 n.13 (observing that Shakespeare had expressed sound legal doctrine when he wrote a person's " 'acts did not o'ertake his bad intent;/And must be buried but as an intent/That perish'd by the way: thoughts are no subjects,/Intents but merely thoughts.' Measure for Measure, Act V, Scene 1; G. Williams, Criminal Law, The General Part 1 [2d ed. 1961.]"). Both a criminal act, an *actus reus*, and a culpable mental state, a *mens rea*, are required for the offense to occur. *Apfelbaum*, 445 U.S. at 131; *Brown*, 295 Kan. at 202.

In summary, a defendant's mental state should not be used to define or determine whether a touching is lewd. We, therefore, clarify *Wells* and hold that whether a touching is lewd should be determined by considering the common meaning of the term "lewd," that is, whether a touching is "sexually unchaste or licen-

tious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; indecent, obscene, or salacious." *Wells*, 223 Kan. at 98; see Black's Law Dictionary 991 (9th ed. 2009) (defining "lewd" as "obscene or indecent; tending to moral impurity or wantonness"). In considering if a touching meets this definition, a factfinder should consider whether the touching "tends to undermine the morals of a child [and] . . . is so clearly offensive as to outrage the moral senses of a reasonable person." *Wells*, 223 Kan. at 98; see *Coulston*, 290 Kan. at 967. Any contrary language in *Wells* is overruled.

In the present case, viewing the evidence in the light most favorable to the State, the State presented evidence that Ta caressed the children's faces, hair, arms, and legs. This type of touching, when considered without regard to surrounding circumstances, was not lewd. When considered in the surrounding circumstances, as it should be, the fact that Ta was a stranger who approached small children and who was undaunted by the reaction to his touching makes the touching awkward and strange to the point the mothers were understandably uneasy. Nevertheless, the touches were not indecent, obscene, salacious, unchaste, or licentious. See *Wells*, 223 Kan. at 98 (defining "lewd"). Nor did the touches tend to undermine the morals of the children or outrage the moral sense of a reasonable person. Thus, the State failed to establish sufficient evidence to support the element of lewd fondling or touching.

Accordingly, because the State failed to present evidence that Ta engaged in any lewd fondling or touching of the two children, we reverse Ta's convictions for aggravated indecent liberties with a child.

Consequently, we need not address Ta's other allegations of trial and sentencing error.

Reversed.