<u>MODIFIED OPINION</u>[1]

NOT DESIGNATED FOR PUBLICATION

No. 122,797

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TOMAS CO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Original opinion filed December 23, 2021. Modified opinion filed March 18, 2022. Conviction reversed and sentence vacated.

*Christopher M. Joseph* and *Carrie E. Parker*, of Joseph, Hollander & Craft LLC, of Topeka, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON and HURST, JJ.

PER CURIAM: A Shawnee County jury convicted Dr. Tomas Co of one count of unlawful sexual relations with an inmate. Dr. Co appeals, arguing the district court gave

---

[1]**REPORTER'S NOTE**: Opinion No. 122,797 was modified by the Court of Appeals on March 18, 2022, in response to the State's motion for rehearing or modification.

1

the jury erroneous instructions and that his conviction was not supported by sufficient evidence. Because this court agrees that his conviction was not supported by sufficient evidence, Dr. Co's conviction is reversed and his sentence is vacated. There is no need to reach the jury instruction issue.

FACTUAL AND PROCEDURAL BACKGROUND

Dr. Tomas Co is the former supervisor of the dental laboratory at the Topeka Correctional Facility, the state's only women's prison. Dr. Co worked for a company that contracts with the Kansas Department of Corrections (KDOC) to run the dental lab at the Topeka Correctional Facility where he taught the inmate students how to fabricate dentures. He also conducted lectures for the students and provided training and overall supervision of more experienced student inmates.

The State charged Dr. Co with, among several other charges, unlawful sexual relations with an inmate in violation of K.S.A. 2016 Supp. 21-5512(a)(1) stemming from his conduct toward R.H., an inmate who worked in the dental lab. R.H. worked at the dental lab and received instruction from Dr. Co from about July 2016 to early 2017. Although the State charged Dr. Co with numerous counts of unlawful sexual relations related to multiple inmates, the jury only convicted him of one count related to R.H.—the facts related to any other allegations are not relevant to this appeal.

R.H. testified at trial that while she worked in the dental lab, Dr. Co frequently touched her in ways that made her feel uncomfortable. She eventually asked him to stop, but when he did not, she reported him to the prison administration and stopped working in the dental lab. In describing the touching, R.H. testified that Dr. Co "sometimes would briefly touch my hands if he was passing me something. Or if he was helping me work on a case, sometimes he would touch the inside of my knee and my thigh." R.H. explained that Dr. Co would also touch her leg "[j]ust above the knee on the inside of my leg." She

2

said this leg and hand touching occurred almost every day and that the touching made her "nervous" and she "didn't really know how to react."

R.H. testified that Dr. Co also engaged in other inappropriate behaviors while supervising her in the lab. For example, R.H. recalled that Dr. Co would ask her what she planned to do after she was released from prison and suggested that he would like to take her on a trip to Europe and "buy [her] nice things." R.H. also testified that, around Christmas 2016, Dr. Co obtained a photograph of her, which she had taken as a Christmas present for her family, and made several copies. R.H. testified that Dr. Co made a larger copy of the image for himself and told her that "[he] was going to put the big blown-up picture on his nightstand and that he was going to make a body pillow of my picture." Around the same time, Dr. Co requested that she give him a Christmas present. In response, she gave him a sexually suggestive Christmas card.

Dr. Co gave the investigating agent a memo he wrote to himself shortly after receiving the Christmas card from R.H. The memo states, in part:

> "[B]rought it to the computer desk and look inside between the [newspaper] pages and I saw a red envelope, looks like a Christmas card. When I had a chance to open the envelope it contains a Christmas card with a personal message inside and her picture. It was only then that I realize all this meant something more than friendly greetings. . . . I am keeping it for now to find out where is this going. . . . ????"

After a four-day trial, the jury found Dr. Co guilty of one count of unlawful sexual relations with R.H. However, the jury acquitted Dr. Co of the five other counts of unlawful sexual relations related to similar allegations towards other inmates who worked in the dental lab. The district court sentenced Dr. Co to 32 months in prison.

3

On appeal, Dr. Co asserts: (1) The district court erred in not including the word "consensual" as an essential element of the crime in the jury instructions; and (2) the State presented insufficient evidence to support his conviction for unlawful sexual relations with R.H. Because this court finds resolution of the second issue to be dispositive, there is no need to reach any decision regarding the alleged error in the jury instruction. Dr. Co argues that the State presented insufficient evidence to support his conviction for unlawful sexual relations because his touching of R.H.'s hand and clothed leg were not "lewd." More specifically, Dr. Co asserts that the district court erred by relying on contextual evidence of his sexual desire or intent toward R.H. to conclude that sufficient evidence supported the jury's verdict.

## I. *Standard of Review*

This court reviews an appeal challenging the sufficiency of the evidence by viewing "all the evidence in the light most favorable to the prosecution" to determine whether "a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). This court does not reweigh the evidence or determine witness credibility, and for this review takes R.H.'s allegations as true and credible. See 307 Kan. at 668. Notwithstanding the forgiving standard governing the sufficiency of the evidence to support a guilty jury verdict, the district and appellate courts have a duty to enter a judgment of acquittal if the State has failed in its burden to put forth sufficient evidence to sustain a conviction. See K.S.A. 22-3419(1); *State v. Ta*, 296 Kan. 230, 236-37, 290 P.3d 652 (2012); *State v. Scott*, 285 Kan. 366, Syl. ¶ 2, 171 P.3d 639 (2007). This authority exists in recognition that no fact-finder is infallible, and is exercised by this court only when necessary to ensure the accurate application of the law.

II.     *Dr. Co's Conviction Requires Evidence of Lewd Fondling or Touching*

The jury convicted Dr. Co of one count of unlawful sexual relations in violation of K.S.A. 2016 Supp. 21-5512(a)(1), which prohibits "an employee or volunteer of the department of corrections, or . . . a contractor" with the department of corrections from "engaging in consensual sexual intercourse, *lewd fondling or touching*, or sodomy" with an inmate who is not their spouse. (Emphasis added.) Simply put, a KDOC employee, contractor, or volunteer commits the crime if they engage in the identified, prohibited sexual or lewd contact with an inmate. The purpose is clear—to ensure persons that hold positions of power do not sexually victimize inmates.

It is undisputed that Dr. Co was an employee or contractor with the KDOC, and that this statute applies to him and prohibits him from engaging in prohibited sexual or lewd contact with inmates. It is also undisputed that R.H. was an inmate, not Dr. Co's spouse, and the statute applies to her. Finally, for purposes of this analysis, this court accepts as true that Dr. Co physically touched R.H. in all the ways she described. The only question is whether Dr. Co's physical touching of R.H. constituted "*lewd* fondling or touching" as required by the statute underlying his conviction. (Emphasis added.) K.S.A. 2016 Supp. 21-5512(a)(1). The statute does not prohibit every touching, whether purposeful or inadvertent, that might occur between an inmate and a KDOC employee— but only prohibits "lewd" touching.

a. *The Kansas Supreme Court Defined "Lewd" Touching and Prohibits Considering Intent in Determining if Touching or Fondling Is "Lewd"*

The Kansas Supreme Court has held that determining whether touching is "lewd" requires evaluation of the act itself, without consideration of the actor's mental state when the touching occurred. *Ta*, 296 Kan. at 242-43. Given that limitation, the court has held

5

that the acts of touching another's hand or inside of the leg are not "lewd," even when done with a sexual intent. 296 Kan. at 243.

In *Ta*, the Kansas Supreme Court evaluated whether sufficient evidence supported a conviction for aggravated indecent liberties with a child, a crime where, like the crime of unlawful sexual relations at issue here—one element requires sufficient proof of "lewd fondling or touching." 296 Kan. at 230. In July 2009, the defendant approached two girls, ages two and three, outside a public movie theater and proceeded to touch their hair, face, arms, and legs. Both of the girls' mothers were present at the time. The three-year-old's mother placed the toddler on a bench and sat on an adjoining bench with the other mother and two-year-old child. The three-year-old's mother testified that Ta approached and introduced himself to the mothers, and then approached the three-year-old and asked her name. The child did not answer, and Ta brushed her hair away from the front of her face, tucked it behind her ear, and then rubbed his fingertips up and down the child's arm which the mother described as a brief, comforting pat. The two-year-old's mother described Ta's behavior as a caressing of her face and that Ta rubbed up and down the three-year-old's upper leg.

After Ta touched the three-year-old, the mother of the younger child picked up the three-year-old and walked toward the theater. Ta then approached the younger child. The older child's mother testified that Ta grabbed the two-year-old's arm and was feeling on it, and then walked away, and the three-year-old's mother picked up her friend's child and walked toward the theater. Ta's testimony was more incriminating. He testified that he rubbed the two-year-old's knee, introduced himself, and asked her name. When the child did not answer, Ta testified that he touched her face and her hair and her chin.

The two mothers found Ta's behavior suspicious and called the police. The mothers told the officers that Ta touched their children's legs and faces and "'they believed he was trying to molest the kids.'" 296 Kan. at 232. The responding officers

6

interviewed Ta to determine whether he violated any laws. During the police interview, Ta readily admitted that he was worried he had a problem with sexual urges toward children and that he wanted to see a doctor. Ta stated that his sexual urges toward children were getting stronger and that he felt he was a danger. The officer asked if touching the children satisfied his sexual desire, and Ta responded that "'he wanted to have sex with them.'" 296 Kan. at 233. Ta never admitted to having sex with children—all of his statements to officers were hypothetical. The officers took Ta into custody where he made additional statements about his sexual urges toward young children.

The State charged Ta with two counts of aggravated indecent liberties with a child, which required a showing that he engaged in "'lewd fondling or touching'" of a child under the age of 14 "'with the intent to arouse or to satisfy the sexual desires'" of Ta. 296 Kan. at 234. During the trial, Ta admitted there was substantial evidence to establish the mens rea required for the charge—that he did in fact have sexual intent toward the two young children. However, Ta argued—as Dr. Co does here—that the State lacked evidence as to whether the touching was lewd under the statute. The charges of aggravated indecent liberties with a child required both elements, one of "lewd fondling or touching" and one of intent.

Ta moved for a judgment of acquittal at the conclusion of the State's evidence and again after the jury verdict, asserting there was insufficient evidence of "lewd" touching or fondling. The district court denied both motions and entered the jury's verdict convicting him of two counts of aggravated indecent liberties with a child. Ta appealed and the Kansas Supreme Court agreed with him and reversed his conviction, concluding that the touching, though done with an admitted sexual intent, was not "lewd." 296 Kan. at 243.

7

Specifically, the *Ta* court explained:

"[T]he State presented evidence that Ta caressed the children's faces, hair, arms, and legs. This type of touching, when considered without regard to surrounding circumstances, was not lewd. When considered in the surrounding circumstances, as it should be, the fact that Ta was a stranger who approached small children and who was undaunted by the reaction to his touching makes the touching awkward and strange to the point the mothers were understandably uneasy. Nevertheless, the touches were not indecent, obscene, salacious, unchaste, or licentious. . . . Nor did the touches tend to undermine the morals of the children or outrage the moral sense of a reasonable person." 296 Kan. at 243.

Ultimately, the court found that "the State failed to establish sufficient evidence to support the element of lewd fondling or touching." 296 Kan. at 243. The court further provided guidance on how to evaluate whether there is sufficient evidence upon which a jury could determine a physical touching was legally "lewd," and stated:

"[T]he defendant's mental state should not be used to define or determine whether the touching or fondling is lewd. Rather, whether a touching or fondling is lewd should be determined by considering the common meaning of the term 'lewd,' that is whether a touching is sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; or indecent, obscene, or salacious. In considering if a touching meets this definition, a factfinder should consider whether the touching tends to undermine the morals of a child and is so clearly offensive as to outrage the moral senses of a reasonable person." 296 Kan. 230, Syl. ¶ 5.

The *Ta* court's instruction guides this court's analysis of whether Dr. Co's actions constituted "lewd fondling or touching" under K.S.A. 2016 Supp. 21-5512(a)(1).

b. *Dr. Co's Conduct Does Not Meet the Definition of "Lewd Fondling or Touching"*

8

It is undisputed that Dr. Co touched R.H. But Kansas law does not criminalize every type of touching, even in the case of an agent of the KDOC touching inmates. The statute underlying Dr. Co's conviction prohibits only touching that is objectively lewd given the surrounding circumstances. In fact, in accordance with the decision in *Ta*, the statute does not prohibit him from physically touching inmates even if he has romantic or sexual desire toward the inmate. The State could have charged Dr. Co with a different offense that did not require the showing of "lewd fondling or touching" and criminalized other types of touching—but the charged statute requires a showing that Dr. Co's conduct met the objective standard of "lewdness." Under an objective standard, conduct must be judged as lewd based on how a reasonable person would view it given all of the circumstances. The defendant's thoughts are not material to the objective determination of lewdness. An agent of the KDOC charged with violating K.S.A. 2020 Supp. 21-5512(a)(1) would have no legal defense just because they sincerely believed their conduct was not lewd, if it objectively was. By the same standard, however, a defendant could not be convicted *because* they sincerely believed their conduct was lewd when it objectively was not.

Dr. Co's touching of R.H. was very similar to the defendant's touching of the young children in *Ta*. At trial, R.H. testified that Dr. Co touched "[j]ust my hands, and sometimes the inside of my leg, on my thigh, above my knee." When asked specifically about the leg touching R.H. said, "Just above the knee on the inside of my leg." R.H. was then asked, "[N]ot higher, just inside of the knee?" R.H. responded, "Correct." R.H. testified that while she and Dr. Co worked together on a dental appliance "[he] would be sitting right next to me" with their legs underneath the workstation and he would touch the inside of her knee. She agreed that Dr. Co grabbed her leg underneath the workstation and he left his hand on her leg "'[m]aybe just for a couple of seconds.'"

Unlike the touching in *Ta* which occurred in a single incident, R.H. testified that Dr. Co repeatedly touched her hands and leg. But nonlewd touching does not necessarily

9

become "lewd" merely through repetition. There is no doubt that the evidence showed Dr. Co's touching was inappropriately motivated, unprofessional, improper, and made R.H. uncomfortable. This court does not condone his conduct, nor should the parties understand this opinion to suggest that a person must permit or acquiesce to any type of unwanted touching, including touching that may not be considered legally "lewd." The question before this court is whether Dr. Co's touching violated the very specific statute charged by the State. As a professional working with inmates, Dr. Co should not have touched R.H. in the manner she described. However, as explained by the Kansas Supreme Court, this type of touching, when considered without regard to Dr. Co's mental state, is not lewd and cannot support a conviction for unlawful sexual relations under K.S.A. 2016 Supp. 21-5512.

This court must consider the touching itself and the surrounding circumstances—not Dr. Co's mental state or intent—when determining whether his touching of R.H. was "lewd." See *Ta*, 296 Kan. at 243. Touching is "lewd" only if it "is sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; or indecent, obscene, or salacious." 296 Kan. 230, Syl. ¶ 5. And the fact-finder should consider whether it "tends to undermine the morals" of the person touched or is "so clearly offensive as to outrage the moral senses of a reasonable person." 296 Kan. at 242-43.

The circumstances are that R.H. was an adult prisoner and Dr. Co was in a position of power over her as a KDOC employee or contractor as well as her instructor and work supervisor. That circumstance tends to lend suspicion to any touching done by Dr. Co. Additionally, Dr. Co had developed a familiar and personal relationship with R.H. in which he discussed taking her on a trip to Europe, made personal copies of a photograph of her, discussed making a body pillow with her picture, and kept a sexually suggestive Christmas card R.H. gave him. All of these circumstances suggest that Dr. Co overstepped professional boundaries with R.H., but they do not support a finding of lewd

touching when the touching was limited to brief touches on R.H.'s hand and leg around and just above her knee.

The Kansas Supreme Court has found touching to be lewd when a defendant kissed a child on the mouth, pulled her onto a bed, and lay atop her, and then later fondled her buttocks and pubic area on the outside of her clothing. *State v. Ramos*, 240 Kan. 485, 486-87, 731 P.2d 837 (1987), *superseded by statute on other grounds as stated in State v. Hutchcraft*, 242 Kan. 55, 744 P.2d 849 (1987). Contrarily, when a defendant put a child between his legs and then moved the child onto his lap while swimming, the touching was not considered lewd. *State v. Colston*, 290 Kan. 952, 967, 235 P.3d 1234 (2010). The intent of the toucher is irrelevant to determining whether the touching met the legal definition of *lewd* touching, for to find otherwise would punish mere thoughts.

The statute under which Dr. Co was convicted does not prohibit him from having sexual thoughts, being sexually attracted to, or wanting a sexual relationship with R.H. Such a prohibition would quite obviously be constitutionally unsound. Contrary to dystopian movie plots, the State cannot regulate the sexual thoughts of all persons working at KDOC facilities. There is no allegation that Dr. Co and R.H. were not fully clothed when he touched her hand and leg near the knee. These interactions often occurred in a work area where other people were present. Dr. Co's touches were quick and brief, not described as caressing or rubbing, and were limited to hands, a knee, and a leg above the knee. This court recognizes the touching was unwelcome, inappropriate, and a violation of KDOC policy warranting a severe sanction against Co. But, under the circumstances, the contact could not be objectively described as lewd.

While there is no conclusive list of touches that meet the definition of lewd touching—courts must consider whether the touching undermines the morals of the person touched or is "so clearly offensive as to outrage the moral senses of a reasonable person." *Ta*, 296 Kan. at 242-43. In this case, a brief "[m]aybe just for a couple of

11

seconds" touch of a clothed leg, including the inside of the leg near and "[j]ust above the knee," committed while all parties were fully clothed and seated next to each other at a workstation does not constitute lewd touching that outrages the moral senses. R.H. clearly testified that Dr. Co did not touch her inner leg any higher than just inside or above the knee. This court agrees that touching or fondling that does not involve genital touching can be considered lewd—but that cannot mean that every physical contact is lewd.

R.H. was understandably uncomfortable with Dr. Co repeatedly touching or brushing against her hands and leg near her knee area, and the amount of attention he paid to her.

While it is more likely than not that Dr. Co had sexual, personal, or intimate feelings toward R.H., the charged statute does not criminalize all touching—even if committed by a person with sexual desire toward the person being touched. As noted above, a court must examine "lewd" touching without regard to the actor's intent and such touching must be "sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; or indecent, obscene, or salacious." 296 Kan. 230, Syl. ¶ 5.

Although the district court sought to distinguish Dr. Co's actions from that of the defendant in *Ta*, such attempt is unpersuasive. Dr. Co's touching of R.H.'s hands, knee, and leg just above the knee, while inappropriate and unwarranted, did not meet the definition of "lewd" as stated by the *Ta* court. The touching did not undermine R.H.'s morals, nor was it "sexually unchaste or licentious" or "suggestive of or tending to moral looseness," and it was not "inciting to sensual desire or imagination" or "indecent, obscene, or salacious." Whether Dr. Co intended his conduct to be lewd, sexually suggestive, or arousing is not at issue here because Dr. Co's intent is not an element of the statute under which he was convicted. The only inquiry is whether the touches that R.H.

12

alleged Dr. Co committed met the objective definition of lewd—and they did not. Accordingly, there was insufficient evidence to support the finding that Dr. Co's touching of R.H. was lewd. Therefore, Dr. Co's conviction for unlawful sexual relations must be reversed and his sentence vacated.

Conviction reversed and sentence vacated.